******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIAN SARRAZIN *v.* COASTAL, INC.
(SC 18877)

Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh, McDonald and
Espinosa, Js.*

*Argued April 18, 2013—officially released April 29, 2014*

*Leonard A. McDermott*, for the appellant (plaintiff).

*Steven R. Rolnick*, for the appellee (defendant).

*Margaret B. Ferron* filed a brief for the Connecticut
Employment Lawyers Association as amicus curiae.

*Opinion*

ESPINOSA, J. This appeal requires us to consider under what circumstances an employee's travel time between home and work constitutes compensable work time. In this action seeking payment of overtime wages, the plaintiff, Brian Sarrazin, appeals[1] from the judgment of the trial court awarding him $641.44,[2] in accordance with a stipulated agreement between the plaintiff and the defendant, Coastal, Inc., and denying his motion for attorney's fees. The plaintiff claims that the trial court improperly concluded that the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), preempts the relevant state laws and regulations governing overtime and travel time. See General Statutes (Supp. 2014) §§ 31-60[3] and 31-71b;[4] General Statutes §§ 31-76b (2) (A)[5] and 31-76c;[6] Regs., Conn. State Agencies § 31-60-10.[7] The plaintiff further argues that pursuant to § 31-60-10 (b) of the regulations, which he claims confers greater benefits than those afforded to employees under the relevant provision of the FLSA, 29 U.S.C. § 254 (a)[8] (also referred to as the Portal-to-Portal Act of 1947, as amended by the Employee Commuting Flexibility Act of 1996, Pub. L. No. 104-188, 110 Stat. 1928 [Portal-to-Portal Act]),[9] he is entitled to overtime compensation for his travel time. In the alternative, the plaintiff claims that the trial court improperly concluded that his travel time was not compensable under the Portal-to-Portal Act. Finally, the plaintiff claims that the trial court improperly denied his motion seeking attorney's fees. Because we conclude that § 31-60-10 (b) of the regulations, as applied to the facts of the present case, confers lesser benefits on employees than those afforded under the FLSA, we conclude that federal preemption applies, and resolve the plaintiff's claim under the Portal-to-Portal Act, pursuant to which we conclude that the plaintiff is not entitled to compensation for his commuting time. Accordingly, we affirm the judgment of the trial court in favor of the plaintiff. We also affirm the decision of the trial court denying the plaintiff's motion for attorney's fees.

The record reveals the following relevant facts, some of which are undisputed, others as found by the trial court, and procedural history. The defendant, a plumbing subcontractor engaged in the installation and repair of plumbing systems in large construction projects throughout the state, handles, sells and works with goods that move in interstate commerce and has annual gross sales in excess of $500,000. In September, 2004, the plaintiff began working for the defendant as a plumber. At all relevant times, the plaintiff's work hours were from 7 a.m. until 3:30 p.m., with one-half hour for lunch, five days a week, for a total of forty hours per week. Each day the plaintiff traveled directly from his home to the location of his current job assignment, which changed periodically. The complaint alleged that

the plaintiff's commute to the various job sites was approximately one hour each way for a total of two hours travel time each day, in excess of his regular forty hours per week.

After laying off the plaintiff in June, 2005, the defendant rehired him in February, 2006, and then promoted him to plumbing foreman in March, 2006. The plaintiff's promotion came with a pay raise of $1 per hour and the use of a company pickup truck for commuting to the various job sites. Although the plaintiff was expected to arrange during business hours for regular service and maintenance of the truck, the defendant paid for all gasoline, maintenance and repairs. As foreman, the plaintiff was required to keep some of the defendant's equipment and tools in the truck so that he could bring them back and forth from his home to the job sites. Additionally, the defendant occasionally directed the plaintiff to pick up tools and equipment from the defendant's warehouse at the end of the workday, after regular work hours, for use at the job site on the next day. The plaintiff drove the pickup truck until May, 2006, when the truck was totaled in an accident. For the next eight to nine months, the plaintiff drove his own truck to work, and the defendant paid him an extra $50 per week, until the defendant provided the plaintiff with a company van for commuting purposes, which he used for one year and two months until the defendant demoted him in March, 2008.[10] The plaintiff alleged that while he was foreman, when he arrived home after work each day, he spent one-half hour cleaning the company vehicle—or his own truck, during the period following the accident—and organizing the tools for the next day.

The plaintiff brought this action, seeking payment of overtime wages for: (1) the daily commute between his home and the job sites; (2) the one-half hour that he claimed he spent cleaning the vehicle and organizing the tools after he arrived home each day; and (3) the occasional trips he made to the defendant's warehouse to pick up tools and equipment.[11] The plaintiff claimed that the defendant's failure to pay him the claimed wages violated General Statutes §§ 31-60, 31-71b, and 31-76c, and § 31-60-10 (b) of the regulations. The parties agreed to bifurcate the issues of liability and damages. Following the trial on liability, the court issued a memorandum of decision finding that the defendant was liable only for payment of overtime compensation in connection with the plaintiff's claim that he made occasional trips to the defendant's warehouse to pick up tools and equipment. With respect to that claim, the court found that the testimony established that the defendant had required the plaintiff to take such trips before or after his regular work hours on at least some occasions. The court accordingly held that the plaintiff was entitled to recover for the number of such trips that he could prove occurred.

As to the remaining two claims, the court resolved the plaintiff's claim for compensation in connection with the alleged one-half hour each day he spent cleaning the company vehicle and organizing the tools on the basis of its factual findings to the contrary.[12] Regarding the plaintiff's claim for compensation in connection with his daily two hours of travel time, the court first concluded that the FLSA preempted applicable state laws, then applied the Portal-to-Portal Act to evaluate the plaintiff's claim.[13] In the course of its analysis, the court made the following additional findings. The plaintiff was employed as a plumbing foreman, not a driver. The use of the company vehicle for commuting—pursuant to an oral agreement between the plaintiff and the defendant—was "one of the benefits of being a foreman," and the requirement that he carry tools in the vehicle was merely incidental to his use of it for commuting. Finally, the court found that the distance that the plaintiff traveled from home to the various job sites was within the normal commuting area for the defendant's business. On the basis of these factual findings, the court concluded that the plaintiff had failed to prove that he was entitled to overtime wages for his commuting time pursuant to the Portal-to-Portal Act.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, which dismissed the appeal sua sponte for lack of a final judgment, on the basis that the court had not yet ruled on damages. On remand, the trial court rendered judgment awarding the plaintiff $641.44 in overtime wages for his occasional trips to the defendant's warehouse; see footnote 2 of this opinion; and denying the plaintiff's motion for attorney's fees. This appeal followed.

The plaintiff claims that the trial court improperly concluded that the FLSA preempts Connecticut statutes and regulations governing overtime wages and travel time, and improperly applied federal principles to conclude that he was not entitled to overtime compensation for his travel time. Specifically, the plaintiff relies on an interpretation of § 31-60-10 of the regulations by the Connecticut Department of Labor (department) to argue that § 31-60-10 (b) confers greater benefits on employees than does the Portal-to-Portal Act. Therefore, the plaintiff argues, the FLSA's savings clause; 29 U.S.C. § 218[14] (savings clause); dictates that state law governs his claim, under which he is entitled to overtime compensation for his travel time. The defendant responds that the FLSA preempts applicable state laws because the savings clause covers only minimum wage and overtime laws, not travel time laws, and, in the alternative, because the applicable state laws are not more beneficial to employees than the FLSA. Because we conclude that § 31-60-10 (b) of the regulations, as applied to the facts of the present case, confers lesser benefits to employees than the FLSA does, we conclude

that state law is preempted. Applying the Portal-to-Portal Act to the plaintiff's claim, we conclude that the trial court properly concluded that the plaintiff was not entitled to compensation for his travel time.

I

SCOPE OF THE FLSA PREEMPTION

We first consider whether the FLSA, specifically the provisions of the Portal-to-Portal Act, preempts our state laws governing travel time and overtime. "Under the Supreme Clause of the United States Constitution, state laws that conflict with federal law are without effect . . . and are preempted. The purpose of Congress is the ultimate touchstone in every [preemption] case . . . and we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (Citations omitted; internal quotation marks omitted.) *New York State Restaurant Assn.* v. *Board of Health*, 556 F.3d 114, 123 (2d Cir. 2009). "Congressional intent primarily is discerned from the language of the preemption statute and the statutory framework surrounding it. . . . There are three types of preemption: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." (Citations omitted; internal quotation marks omitted.) *Sosnowy* v. *A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 463 (E.D.N.Y. 2011).

"By their nature, field preemption and conflict preemption are usually found based on implied manifestations of congressional intent. . . . Conflict preemption exists when compliance with both state and federal law is impossible, and a subset of conflict preemption referred to as obstacle preemption applies when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. . . . State law is in irreconcilable conflict with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." (Citations omitted; internal quotation marks omitted.) Id., 463–64. Put another way, state law conflicts with federal law when "compliance with both federal and state regulations is a physical impossibility . . . ." *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142–43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963).

No provision in the FLSA expressly preempts state law. Additionally, we previously have observed that it

is clear that Congress did not intend that the FLSA occupy the field. See *Davenport Taxi, Inc.* v. *State Labor Commissioner*, 164 Conn. 233, 236–37, 319 A.2d 386 (1973) ("The history of the legislation leaves no doubt that Congress chose not to enter areas it might have occupied . . . . This necessarily means that there is a remaining area which is the subject for appropriate state regulation." [Citation omitted; internal quotation marks omitted.]). The FLSA, therefore, preempts only state law that is in "irreconcilable conflict" with federal law. *Sosnowy* v. *A. Perri Farms, Inc.*, supra, 764 F. Supp. 2d 464. This conclusion is consistent with the savings clause of the FLSA, which expressly provides in relevant part that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . ." 29 U.S.C. § 218 (a). Courts have interpreted the savings clause to set the FLSA as a national floor with which state law must comply. That is, state laws that provide less protection than guaranteed under the FLSA are in irreconcilable conflict with it and are preempted; state laws that provide the same or greater protection than that provided by the FLSA are consistent with the federal statutory scheme and are thus not preempted. See, e.g., *Overnite Transportation Co.* v. *Tianti*, 926 F.2d 220, 222 (2d Cir.) (observing that "every Circuit [Court of Appeals] that has considered the issue has reached the same conclusion—state overtime wage law is not preempted by . . . the FLSA"), cert. denied, 502 U.S. 856, 112 S. Ct. 170, 116 L. Ed. 2d 133 (1991); *Rogers* v. *Richmond*, 851 F. Supp. 2d 983, 985, 986 (E.D. Va. 2012) (no preemption of "potentially more generous provisions" of state law because state and federal law can—and must—"operate in tandem").

The defendant urges us to adopt a narrow interpretation of the savings clause that would restrict its scope to laws that *directly* concern overtime and the minimum wage. Specifically, the defendant observes that the savings clause expressly "save[s]" only state laws "establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . ." 29 U.S.C. § 218 (a). Relying on that language, the defendant argues that the FLSA preempts all relevant state laws except those that either establish higher minimum wages or mandate lower maximum workweeks. Section 31-60-10 (b) of the regulations, the defendant claims, does not fit either category, and instead governs travel time, not overtime or the minimum wage. The trial court appears to have applied this same reasoning to conclude that the savings clause does not cover state travel time laws.

For two reasons, we disagree with this narrow interpretation of the savings clause. First, as we explain in this opinion, preemption under the FLSA is relatively narrow in scope, extending only to directly conflicting laws. Second, the defendant's argument assumes that laws governing travel time compensability are easily separable from overtime and minimum wage laws. By contrast, the United States Supreme Court recognized the interwoven nature of compensability and overtime and minimum wage laws in *Tennessee Coal, Iron & Railroad Co.* v. *Muscoda Local No. 123*, 321 U.S. 590, 64 S. Ct. 698, 88 L. Ed. 949 (1944), observing that before it could determine whether miners were entitled to recover overtime wages for the time spent traveling underground to the work site, "[i]t is vital, of course, to determine first the extent of the actual workweek. Only after this is done can the minimum wage and maximum hour requirements of the [FLSA] be effectively applied." Id., 598; see also *Spoerle* v. *Kraft Foods Global, Inc.*, 614 F.3d 427, 429 (7th Cir. 2010) (holding that savings clause applies to laws governing compensability of donning and doffing time, and observing that it was undisputed that if state law provided more generous minimum wage, preemption would not apply; "if this is so for the hourly rate, it must be equally so for the number of hours, because how much pay a worker receives depends on the number of hours multiplied by the hourly rate . . . [and] [i]t would be senseless to say that a state may control the multiplicand but not the multiplier, or the reverse, because control of either one permits the state to determine the bottom line [provided that the state's number exceeds the federal minimum . . .]"), cert. denied,    U.S.   , 131 S. Ct. 933, 178 L. Ed. 2d 753 (2011).

Similarly, in the present case, the compensability of the plaintiff's travel time is inextricably linked to his entitlement to overtime. Like donning and doffing laws, travel time laws dictate what type of activities are compensable and an employee's entitlement to overtime depends on that determination. Accordingly, the savings clause applies.

## II

### PREEMPTION ANALYSIS

The question of whether the FLSA preempts the applicable state laws in the present case, accordingly, requires us to compare the relevant federal and state provisions to determine whether our state laws meet the national floor. Preemption applies only if our state overtime laws and related travel time regulations are less generous to employees than the FLSA. Regarding overtime compensation, 29 U.S.C. § 207 (a) (1) provides in relevant part that "no employer shall employ any . . . [employee] . . . for a workweek longer than forty hours unless such employee receives compensation for

his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The corresponding state statute, § 31-76c, is indistinguishable from 29 U.S.C. § 207 (a) (1), and provides in relevant part: "No employer . . . shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." General Statutes § 31-76c. Obviously, therefore, 29 U.S.C. § 207 (a) (1) does not preempt § 31-76c.

Our inquiry does not end there. For purposes of determining whether the plaintiff is entitled to overtime wages, his travel time counts toward his total weekly work hours only if that time is compensable. Accordingly, we must consider the relative rights available to employees under the federal and state laws and regulations governing the compensability of travel time, namely, the Portal-to-Portal Act and § 31-60-10 of the regulations.

We begin with the national "floor" set by the Portal-to-Portal Act, which establishes a general rule that commuting time, as well as activities that are preliminary and postliminary to the employee's principal work activity, are not compensable. Specifically, the Portal-to-Portal Act provides that "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform"; 29 U.S.C. § 254 (a) (1); as well as "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities," are not compensable. 29 U.S.C. § 254 (a) (2); see footnote 8 of this opinion. Additionally, the final sentence of 29 U.S.C. § 254 (a), which was added by the Employee Commuting Flexibility Act of 1996, addresses the impact of an employee's use of a company vehicle for commuting, providing: "For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee." 29 U.S.C. § 254 (a); see footnote 8 of this opinion.

Decisions interpreting the Portal-to-Portal Act have carved out an exception to the general rule that travel

time is not compensable. Courts have emphasized that the employee bears the burden of demonstrating that his or her travel time is compensable, and that compensability turns on the question of whether the employee's travel time constitutes "work." *Adams* v. *United States*, 471 F.3d 1321, 1325–26 (Fed. Cir. 2006), cert. denied, 552 U.S. 1096, 128 S. Ct. 866, 169 L. Ed. 2d 723 (2008). To determine whether travel time constitutes compensable "work" under the Portal-to-Portal Act, courts consider whether the employee's commuting time is integral and indispensable to the principal work activity; *Steiner* v. *Mitchell*, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956); an inquiry that is undertaken by assessing the relative benefits gained by the employer and the burdens imposed on the employee by an employer's demands or restrictions on the employee's travel time. *Tennessee Coal, Iron & Railroad Co.* v. *Muscoda Local No. 123*, supra, 321 U.S. 598–99. Put another way, courts consider whether the "time is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case." (Internal quotation marks omitted.) *Singh* v. *New York*, 524 F.3d 361, 367 (2d Cir. 2008). To answer that question, courts examine the degree to which an employer's demands alter the employee's use of commuting time, or, "hinder the employees' ability to use their commuting time as they otherwise would have had there been no work-related restrictions." Id., 369. If that burden is minimal, the employer cannot be said to be the predominant beneficiary of the travel time, and the time is not compensable.

For example, in *Singh*, the court held that the plaintiffs, who worked as fire alarm inspectors for the city of New York (city) and were required to "carry and keep safe inspection documents during their commutes," were not entitled to compensation for their travel time. Id., 364. The plaintiffs, who used public transportation to commute from home to the inspection sites, claimed that the requirement to carry the briefcases full of documents, which weighed between fifteen and twenty pounds, affected their commute and thus rendered their travel time compensable.[15] Id., 365. The plaintiffs argued that the burdens on their commute were significant—the weight of the briefcases slowed down their walk to the subway station, occasionally causing them to miss a bus or train; on other occasions, because of the bulk of the materials they carried, they were forced to select a circuitous route in order to take a train with fewer passengers; and the requirement to keep the documents safe sometimes compelled them to decline invitations to social functions that occurred immediately after work. Id.

The key question before the court was whether the requirement that the plaintiffs carry the briefcases during their commute was integral and indispensable to the plaintiffs' principal work activity. Id., 367. In order to

answer that question, the court turned to a predominant benefit analysis, observing that the relative benefit to the employer often turns on the extent of the burden placed on the employee. Id., 368. Reasoning that the requirement to carry the briefcases placed "only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase"; id.; the court held that the plaintiffs' commute was not transformed into work time by the requirement. Id., 369. The city, therefore, was not the predominant beneficiary of the commuting time. Id., 368–69.

The Second Circuit Court of Appeals best explained the connection between the benefit received by the employer and the degree to which the activity is integral and indispensable to the employee's principal work activity in *Reich* v. *New York City Transit Authority*, 45 F.3d 646, 650 (2d Cir. 1995), observing: "The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable." We read this language to mean that employer demands and restrictions on preliminary and postliminary activities, including commuting time, must be understood on a sliding scale—at a certain point, when the benefits received by the employer and the burdens imposed on the employee are substantial, the time no longer can be viewed as belonging to the employee, and the time becomes compensable.[16]

*Reich* v. *New York City Transit Authority*, supra, 45 F.3d 646, in which police department canine handlers sought compensation for their commuting time, illustrates this sliding scale approach. The court specifically rejected the contention that because the obligation to care for the dogs could arise *at any time* during the commute, the *entire* commute was compensable. Under that rule, the court reasoned, the handlers would be entitled to be compensated on a twenty-four hour basis, because those obligations could arise even while the handlers slept. Id., 651. Feeding, training and walking the dogs were part of the principal work activity, and those activities were primarily for the benefit of the employer, but those obligations did not dominate the commuting time. Id., 650–52. The court explained that "[w]hile there are occasions where dogs need to be walked or restrained, or the car requires cleaning, during the major part of commuting time no work is required. The handler merely drives with the dog in the back seat. The mere presence of a dog does not make the commute compensable."[17] Id., 652.

When, as in the present case, the employee's travel time involves the use of the employer's vehicle, 29 U.S.C. § 254 (a) provides that the use of the vehicle "for

travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee." See footnote 8 of this opinion. To the extent that an employee claims that travel time is compensable due to the use of an employer's vehicle, the employee must demonstrate that the travel was outside the normal commuting area and that the use of the vehicle was *not* subject to an agreement. For purposes of determining whether an agreement exists, courts have held that the agreement need not be in writing; it may be based on a mutual understanding of company practices; *Adams* v. *United States*, 65 Fed. Cl. 217, 225 (2005), aff'd, 471 F.3d 1321 (Fed. Cir. 2006), cert. denied, 552 U.S. 1096, 128 S. Ct. 866, 169 L. Ed. 2d 723 (2008); and it may be a condition of employment. *Rutti* v. *Lojack Corp.*, 596 F.3d 1046, 1052 (9th Cir. 2010).

In summary, under the Portal-to-Portal Act, an employee seeking compensation for commuting time must demonstrate that the requirements and restrictions that the employer has placed on that time have imposed more than a minimal burden on him, transforming that time to an integral and indispensable part of the principal activity for which the worker is employed, undertaken predominantly for the benefit of the employer. The balancing of benefits and burdens is on a continuum, and the more that the employer's requirements burden the employee, preventing the employee from using that commuting time as he otherwise would have, the more likely a court will conclude that the time is for the predominant benefit of the employer. Even if some or all of the travel time is for the predominant benefit of the employer, that activity will still be noncompensable if the amount of time involved is de minimis. Finally, to the extent that a claim for compensable travel time is predicated on the use of an employer's vehicle for commuting purposes, the employee must demonstrate that the commute was outside the normal commuting area and was not the subject of an agreement between the parties.

We next turn to the applicable state law provisions to determine whether state law confers at least the same benefits to employees as guaranteed under the Portal-to-Portal Act. Because, as we explain in this section, we conclude that, as applied to the facts of the present case, state law confers lesser benefits to employees than provided under the Portal-to-Portal Act, federal preemption applies and the Portal-to-Portal Act governs the plaintiff's claim for compensation for his travel time.

The question of whether § 31-60-10 of the regulations affords equal, lesser or more generous benefits to employees than provided under the FLSA presents a question of statutory interpretation, over which we have plenary review. "Administrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction, namely, under the well established principles of General Statutes § 1-2z." (Internal quotation marks omitted.) *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 578, 22 A.3d 518 (2011). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . [Section] 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. General Statutes § 1-2z; see also *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009). Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Tine* v. *Zoning Board of Appeals*, 308 Conn. 300, 305–306, 63 A.3d 910 (2013).

Section 31-60-10 (a) of the regulations defines " 'travel time' " to mean "that time during which a worker is required or permitted to travel for purposes incidental to the performance of his employment but does not include time spent in traveling from home to his usual place of employment or return to home, except as hereinafter provided in this regulation." We first observe that subsection (a) of § 31-60-10 defines travel time generally, and does not confine its definition to *compensable* travel time. It follows, therefore, that not all travel time is compensable travel time. The rules for determining the compensability of travel time are set forth in the remaining three subsections of § 31-60-10, and the definition of travel time set forth in subsection (a) must be read into those subsections. We also observe that an employee's time spent traveling from home to his usual place of employment, and from the usual place of employment to home, to which we refer

in this opinion as an employee's regular commute, is not travel time *at all,* either compensable or noncompensable, except as provided in § 31-60-10 of the regulations.

Subsections (c) and (d) of § 31-60-10 of the regulations identify the exceptions to the exclusion of an employee's regular commute from the concept of travel time. Both subsections address the compensability of an employee's travel between home and a location other than the usual place of employment: subsection (c) considers such travel at the beginning of the workday, dealing with travel from home to a place other than the usual place of employment, and subsection (d) addresses travel at the end of the workday, dealing with travel from a place other than the usual place of employment to home. Specifically, subsection (c) provides: "When an employee is required to report to other than his usual place of employment at the beginning of his work day, if such an assignment involves travel time on the part of the employee in excess of that ordinarily required to travel from his home to his usual place of employment, such additional travel time shall be considered to be working time and shall be paid for as such." Regs., Conn. State Agencies § 31-10-60 (c). Subsection (d) provides: "When at the end of a work day a work assignment at other than his usual place of employment involves, on the part of the employee, travel time in excess of that ordinarily required to travel from his usual place of employment to his home, such additional travel time shall be considered to be working time and shall be paid for as such." Id., § 31-60-10 (d).

Both subsections (c) and (d) of § 31-60-10 of the regulations treat an employee's regular commute as travel time for the limited purpose of calculating the portion of the employee's total travel time that is compensable under each of these subsections. For example, subsection (c) of § 31-60-10 provides that "if such an assignment involves *travel time* on the part of the employee in excess of *that* ordinarily required to travel from his home to his usual place of employment, such *additional travel time* shall be considered to be working time and shall be paid for as such." (Emphasis added.) In this sentence, the pronoun "that" (which refers to an employee's regular commute) refers back to the term "travel time," indicating that the employee's regular commute is considered "travel time" for purposes of the subsection. The phrase "additional travel time" in subsection (c) refers to the difference between the employee's regular commute and the travel from home to a location other than the usual place of employment. There are thus three categories of travel time contemplated by subsection (c): the employee's regular commute, the commute from home to a location other than the usual place of employment, and the difference between those two commutes, when that difference

results in "additional travel time." Although all three categories are treated as "travel time," only the "additional travel time" is compensable travel time. Subsection (d) of § 31-60-10 is structured in a similar manner, treating the employee's regular commute as travel time for the limited purpose of determining whether a commute from a place other than the usual place of employment to home involves "additional" travel time that is therefore compensable. Essentially, both subsections (c) and (d) involve arithmetic. Compensable travel time equals the difference between an employee's regular commute and the travel time between home and the location other than the usual place of employment. Accordingly, although both subsections (c) and (d) treat an employee's regular commute as "travel time," neither subsection provides for any compensation for an employee's regular commute.

Subsection (b) of § 31-60-10 of the regulations, in contrast to subsections (c) and (d), does not provide for an exception to the exclusion in subsection (a), of an employee's regular commute from the concept of travel time. Instead, subsection (b) identifies a general rule for determining when "travel time" will constitute "working time" and thus be compensable. Specifically, subsection (b) provides in relevant part that, if "in the course of his employment, [the employee] is required or permitted to travel for purposes which inure to the benefit of the employer, such *travel time* shall be considered to be working time and shall be paid for as such. . . ." (Emphasis added.) Id., § 31-60-10 (b). The use in subsection (b) of the phrase "travel time," which is defined in the immediately preceding subsection, without any reference to an exception to the general exclusion of an employee's regular commute from the term "travel time," indicates that subsection (b) is confined to "travel time" as defined in subsection (a). That is, subsection (b) does not treat an employee's regular commute as travel time at all, either compensable or noncompensable. Subsection (b), therefore, provides for no compensation for an employee's regular commute.

In summary, pursuant to the plain language of § 31-60-10 of the regulations, we conclude that the regulation provides for no compensation for an employee's regular commute. Because the FLSA does allow for compensation for an employee's regular commute under certain circumstances, preemption applies and the Portal-to-Portal Act governs the plaintiff's claim.[18]

Moreover, we are unpersuaded by the plaintiff's argument that the department's interpretation of § 31-60-10 of the regulations governs our analysis and leads to the conclusion that state law confers greater benefits on employees than those afforded under federal law. The plaintiff relies on an interpretation by the department of § 31-60-10 of the regulations, in a subsection to its

guide to wage laws in Connecticut, entitled "Travel Time Requirements." Connecticut Department of Labor, "A Guide to Wage and Workplace Standards Division and Its Laws" (Rev. 2009), p. 41 (guidebook). The guidebook refers to an April 3, 1995 opinion letter of the United States Department of Labor, Employment Standards Administration, Wage and Hour Division (Department of Labor), setting forth the federal rules governing travel time compensability for commuting in an employer-provided vehicle (1995 opinion letter). Although the department does not expressly state the source of the federal rules governing travel time compensability, that source is the Portal-to-Portal Act of 1947. The department reads § 31-60-10 of the regulations to incorporate the same standards that the 1995 opinion letter read into the Portal-to-Portal Act of 1947. Specifically, the department interprets § 31-60-10 of the regulations to mean that the travel time of an employee who uses a company vehicle to commute from home to the job site is not compensable "if *all* of the [four] following conditions are met: [1] The vehicle in question must be one that would normally be used for commuting. Automobiles, pickup trucks, and vans would clearly fall into this category, *even if they carry company or personal tools*. Vehicles that would not fall into this category are larger trucks (for instance, aerial bucket trucks, cranes, dump trucks, concrete trucks, etc.) and other specialized-use vehicles. [2] The employee incurs no cost for driving or parking the employer's vehicle at his or her home. [3] The work sites must be within normal commuting distance from the employer's establishment. For instance, an employee who parks a company vehicle at his or her home then drives 100 miles to the first stop of the day is clearly traveling farther than normal commuting distance. That employee must be paid from the time [he or she] left home, not from the time [he or she] reached [his or her] first stop. [4] Most importantly, the employee who takes a vehicle home must do so *voluntarily*. Taking the vehicle home under orders from the employer or as a condition of employment means that the employee must be paid for all travel time to and from [his or her] home." (Emphasis altered.) Id. The guidebook further provides that even if all four of the conditions are met, an employee still may be entitled to compensation if he can demonstrate that "the employer derives some considerable benefit from an employee having the vehicle parked at [his or her] home." Id.

This court frequently has stated "that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Consequently, an agency's interpretation of a statute is accorded deference when the agency's interpretation has been for-

mally articulated and applied for an extended period of time, and that interpretation is reasonable." (Internal quotation marks omitted.) *Velez* v. *Commissioner of Labor*, 306 Conn. 475, 484–85, 50 A.3d 869 (2012); accord *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 622, 15 A.3d 1063 (2011); *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 166, 931 A.2d 890 (2007). These principles apply as equally to regulations as they do to statutes. See, e.g., *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698–99, 784 A.2d 354 (2001); *Fullerton* v. *Dept. of Revenue Services*, 245 Conn. 601, 608, 714 A.2d 1203 (1998); *Real Estate Listing Service, Inc.* v. *Real Estate Commission*, 179 Conn. 128, 138–39, 425 A.2d 581 (1979). Thus, we invoke the exercise of plenary review over questions of statutory or regulatory interpretation if an agency's interpretation has not been formally articulated and time-tested by the agency or previously considered by the courts.[19] The requirements that an interpretation be "formally articulated and applied for an extended period of time" provide a proper basis for deference because, like judicial review, they ensure that the interpretation is articulated through procedures that allow for robust adversarial testing and in a manner that has general applicability. *Longley* v. *State Employees Retirement Commission*, supra, 164; see also General Statutes § 4-166 et seq. (setting forth procedures under Uniform Administrative Procedure Act that agencies must follow to adopt regulations or issue declaratory rulings).

The department's interpretation of § 31-60-10 of the regulations was not promulgated pursuant to any formal rule-making procedures or articulated pursuant to any adjudicatory procedures, has not been time-tested[20] or subject to judicial review in this state. See *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 432, 815 A.2d 94 (2003) (declining to accord substantial deference to statement of policy, not adopted pursuant to formal rule-making or adjudicatory procedures, made by chairman of Worker's Compensation Commission because it had been neither time-tested nor subject to judicial review).

Additionally, the history of the 1995 opinion letter on which the department relies for its interpretation calls into question the reasonableness of that interpretation. Specifically, on August 5, 1994, the Department of Labor had issued an opinion letter ruling that *all* travel time between work and home in an employer-provided vehicle was compensable. H.R. Rep. No. 104-585, 104th Cong., 2d Sess., p. 2 (1996). "In response to numerous letters from Members of Congress expressing concern and opposition to the Department of Labor's position"; H.R. Rep. No. 104-585, supra, p. 3; which would have required a reversal of years of industry practice, the Department of Labor issued the 1995 opinion letter, which rescinded the 1994 opinion letter and stated its

revised opinion, on which the department relied to interpret § 31-60-10 of the regulations.

Congress was not satisfied with the 1995 opinion letter for two reasons. First, although not as extreme as the position that the Department of Labor had taken in 1994, its position in 1995 still set a high bar for employers to meet in order for an employee's use of a company car to be noncompensable. Id. Second, the issuing of two opinion letters on the same subject over such a short time period revealed a lack of clarity in the existing law. Id., p. 4. Accordingly, Congress passed the Employee Commuting Flexibility Act of 1996, which amended 29 U.S.C. § 254 (a) to provide that when an employee uses an employer's vehicle to commute, that travel time—as well as any activities that are incidental to the use of the vehicle for travel—is not compensable as long as the travel is within the normal commuting area for the employer's business and the use of the vehicle is subject to an agreement between the employer and the employee or the employee's representative. 29 U.S.C. § 254 (a); H.R. Rep. No. 104-585, supra, pp. 4–5. This legislative history reveals that the position now apparently embraced by the department was emphatically and expressly rejected by Congress in 1996, yet the department's guidebook inexplicably fails to acknowledge the questionable history of the 1995 opinion letter or offer any explanation as to why the department nonetheless relies on an interpretation superseded by congressional action to interpret § 31-60-10 of the regulations. Accordingly, because the department's interpretation is not time-tested, reasonable or the result of formal rule-making procedures, we accord it no deference.

III

COMPENSABILITY OF THE PLAINTIFF'S
TRAVEL TIME

Accordingly, we now evaluate the plaintiff's claim under the Portal-to-Portal Act. The plaintiff, who bears the burden to demonstrate that his travel time is compensable; *Adams* v. *United States*, supra, 471 F.3d 1326; was required to prove that the requirements and restrictions that the defendant placed on his travel time, namely, carrying the defendant's tools and equipment in the back of the defendant's vehicle, imposed more than a minimal burden on him, transforming that time into an integral and indispensable part of the principal activity for which the plaintiff was employed, undertaken predominantly for the benefit of the defendant. To the extent that the plaintiff's claim for compensation is predicated on the use of the defendant's vehicle, the plaintiff must demonstrate that his commute was outside the normal commuting area and was not the subject of an agreement between the parties.

The trial court's factual findings conclusively resolve

this claim in the defendant's favor. As to the question of whether the defendant was the predominant beneficiary of the plaintiff's travel time, the court found that the principal activity for which the plaintiff was employed was to work as a foreman on a construction site, that the requirement that the plaintiff transport the tools during his commute was incidental to the commute itself and that the provision of the vehicle was a benefit to the plaintiff that came with his promotion to foreman. The court's finding that the plaintiff benefited from using the defendant's vehicle for commuting purposes, while not dispositive, supports the conclusion that on the sliding scale of benefits and burdens, the court concluded that the plaintiff rather than the defendant was the predominant beneficiary of the arrangement. Consistent with that conclusion is the court's finding that the transportation of the tools and equipment was incidental to the plaintiff's commute, therefore imposing at most a minimal burden on the plaintiff. The court, in fact, made no finding that the plaintiff was in any way inconvenienced by the requirement that he transport the equipment and tools or that the plaintiff was compelled to alter his behavior during his commute in any way as a result of the requirement. Relevant to that conclusion, the court found that the vehicles in question were a pickup truck and a van, vehicles normally used for commuting. The court also found that it was undisputed that the defendant paid all costs associated with both vehicles, including gas, regular maintenance and repairs. As to the presence of tools in the back of the vehicle, that cannot be said to impose even as much of a burden on the plaintiff's commute as that imposed on the briefcase-toting plaintiffs in *Singh* v. *New York*, supra, 524 F.3d 368. The plaintiff's transportation of the defendant's equipment and tools in the defendant's vehicle may be likened to the majority of the commute of the dog handlers in *Reich* v. *New York City Transit Authority*, supra, 45 F.3d 652. Like a dog that is behaving quietly in the backseat, the mere presence of equipment and tools in the back of the defendant's pickup truck or van does not transform the plaintiff's commute into an integral and indispensable part of the activity for which the plaintiff was employed. Finally, to the extent that the plaintiff's claim for compensation is predicated on his use of the defendant's vehicle for commuting, the court's factual findings compel the conclusion that this fact did not render the plaintiff's commute compensable. Specifically, the court found that the work sites were within the normal commuting area for the defendant's business, and that the use of the vehicle was subject to an agreement between the plaintiff and the defendant. Accordingly, the trial court properly concluded that the plaintiff was not entitled to compensation for his commuting time.

IV

ATTORNEY'S FEES

Finally, we address the plaintiff's claim that the trial court improperly denied his motion for attorney's fees pursuant to General Statutes § 31-72, which provides that in an action to recover unpaid wages, a prevailing plaintiff is entitled to recover "such reasonable attorney's fees as may be allowed by the court . . . ." The court based its denial of fees on its finding that no evidence had been presented at trial that the defendant's actions were in bad faith, arbitrary or unreasonable. The plaintiff argues that the court abused its discretion in denying the fees because he was the prevailing party, at least insofar as he recovered unpaid wages for the occasional trips to the warehouse to pick up equipment and tools, and because the defendant's actions in failing to pay him for his travel time were wilful. Because the defendant wilfully failed to pay him overtime wages, the plaintiff argues, the defendant acted in bad faith.

"[I]t is well established . . . that it is appropriate for a plaintiff to recover attorney's fees, and double damages under [§ 31-72], only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 269, 828 A.2d 64 (2003). In the present case, the trial court specifically found that there was no evidence of bad faith, arbitrariness or unreasonableness. Without that additional factual finding, even if we agreed with the plaintiff that he is the prevailing party—which we need not decide—the trial court properly denied his motion for attorney's fees.

The judgment is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, ZARELLA and EVELEIGH, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The stipulated agreement between the parties actually provides that the defendant and the plaintiff agree that the plaintiff is entitled to recover $691.44. The record does not reveal any explanation for the discrepancy between the amount specified in the stipulated agreement and the amount that the trial court awarded pursuant to that agreement.

[3] General Statutes (Supp. 2014) § 31-60 provides in relevant part: "(a) Any employer who pays or agrees to pay to an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of this part.

"(b) The Labor Commissioner shall adopt such regulations, in accordance with the provisions of chapter 54, as may be appropriate to carry out the purposes of this part. Such regulations may include, but are not limited to, regulations defining and governing an executive, administrative or professional employee and outside salesperson; learners and apprentices, their number, proportion and length of service; and piece rates in relation to time rates; and shall recognize, as part of the minimum fair wage, gratuities in an amount (1) equal to twenty-nine and three-tenths per cent, and effective January 1, 2009, equal to thirty-one per cent of the minimum fair wage per hour, and effective January 1, 2014, equal to thirty-four and six-tenths per cent of the minimum fair wage per hour, and effective January 1, 2015, equal to thirty-six and eight-tenths per cent of the minimum fair wage per hour

for persons, other than bartenders, who are employed in the hotel and restaurant industry, including a hotel restaurant, who customarily and regularly receive gratuities, (2) equal to eight and two-tenths per cent, and effective January 1, 2009, equal to eleven per cent of the minimum fair wage per hour, and effective January 1, 2014, equal to fifteen and six-tenths per cent of the minimum fair wage per hour, and effective January 1, 2015, equal to eighteen and one-half per cent of the minimum wage per hour for persons employed as bartenders who customarily and regularly receive gratuities, and (3) not to exceed thirty-five cents per hour in any other industry, and shall also recognize deductions and allowances for the value of board, in the amount of eighty-five cents for a full meal and forty-five cents for a light meal, lodging, apparel or other items or services supplied by the employer; and other special conditions or circumstances which may be usual in a particular employer-employee relationship. The commissioner may provide, in such regulations, modifications of the minimum fair wage herein established for learners and apprentices; persons under the age of eighteen years; and for such special cases or classes of cases as the commissioner finds appropriate to prevent curtailment of employment opportunities, avoid undue hardship and safeguard the minimum fair wage herein established. Regulations in effect on July 1, 1973, providing for a board deduction and allowance in an amount differing from that provided in this section shall be construed to be amended consistent with this section. . . .”

Although § 31-60 has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2013, No. 13-117, § 2; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the 2014 supplement of the statute.

[4] General Statutes (Supp. 2014) § 31-71b provides in relevant part: “(a) (1) Except as provided in subdivision (2) of this subsection, each employer, or the agent or representative of an employer, shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer, in cash, by negotiable checks or, upon an employee’s written request, by credit to such employee’s account in any bank that has agreed with the employer to accept such wage deposits. . . .”

Although § 31-71b has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2011, No. 11-61; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the 2014 supplement of the statute.

[5] General Statutes § 31-76b (2) (A) defines “ ‘[h]ours worked’ ” to “include all time during which an employee is required by the employer to be on the employer’s premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer.”

[6] General Statutes § 31-76c provides: “No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.”

[7] Section 31-60-10 of the Regulations of Connecticut State Agencies provides: “(a) For the purpose of this regulation, ‘travel time’ means that time during which a worker is required or permitted to travel for purposes incidental to the performance of his employment but does not include time spent in traveling from home to his usual place of employment or return to home, except as hereinafter provided in this regulation.

“(b) When an employee, in the course of his employment, is required or permitted to travel for purposes which inure to the benefit of the employer, such travel time shall be considered to be working time and shall be paid for as such. Expenses directly incidental to and resulting from such travel shall be paid for by the employer when payment made by the employee would bring the employee’s earnings below the minimum fair wage.

“(c) When an employee is required to report to other than his usual place of employment at the beginning of his work day, if such an assignment involves travel time on the part of the employee in excess of that ordinarily required to travel from his home to his usual place of employment, such additional travel time shall be considered to be working time and shall be paid for as such.

“(d) When at the end of a work day a work assignment at other than his usual place of employment involves, on the part of the employee, travel time in excess of that ordinarily required to travel from his usual place of employment to his home, such additional travel time shall be considered to be working time and shall be paid for as such.”

[8] Title 29 of the United States Code, § 254 (a), provides in relevant part: “Activities not compensable . . .

“(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed

to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities,

"which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee."

[9] By way of background, Congress enacted the Portal-to-Portal Act of 1947 in response to initial, broad judicial interpretations of the FLSA that had found employer liability for a variety of preliminary and postliminary activities, thus creating "wholly unexpected liabilities." (Internal quotation marks omitted.) *Bobo* v. *United States*, 37 Fed. Cl. 690, 692 n.3 (1997), aff'd, 136 F.3d 1465 (Fed. Cir. 1998). The Portal-to-Portal Act of 1947, accordingly, narrowed the coverage of the FLSA by excluding liability for most commuting time and preliminary and postliminary activities. *Adams* v. *United States*, 65 Fed. Cl. 217, 221 (2005), aff'd, 471 F.3d 1321 (Fed. Cir. 2006), cert. denied, 552 U.S. 1096, 128 S. Ct. 866, 169 L. Ed. 2d 723 (2008). The Employee Commuting Flexibility Act of 1996 further limited employer liability by amending the Portal-to-Portal Act of 1947 "to clarify that otherwise non-compensable commuting to work is not compensable merely because the employee uses his employer's vehicle." *United Transportation Union Local 1745* v. *Albuquerque*, 178 F.3d 1109, 1117 (10th Cir. 1999).

[10] Count two of the amended complaint brought claims for retaliation for filing this action and constructive discharge, based on the plaintiff's demotion and his subsequent assignment to job sites farther from home. The plaintiff subsequently withdrew count two.

[11] The trial court noted that the complaint did not allege a claim in connection with the occasional trips to the warehouse, but because the plaintiff's evidence on the claim was admitted without objection, the court considered it.

[12] Contrary to the plaintiff's testimony that he was required to perform this task at home, after regular work hours, the trial court found that the defendant provided the plaintiff time during regular hours at the job site to do the cleaning and organizing. He was regularly given five minutes, but if more time was required, the defendant allowed it. The trial court also found that the plaintiff had exaggerated the time required to keep the vehicle clean, and that, in fact, the defendant expected him to keep the vehicle only as presentable as he would his own vehicle. In light of these factual findings, the plaintiff would be unable to prevail on his claim for overtime wages in connection with this claim. Accordingly, we do not address the plaintiff's claim that he is entitled to compensation for his alleged postliminary work cleaning the company vehicle.

We further observe that, without expressly claiming that the trial court's factual findings were clearly erroneous, the plaintiff questions a number of those findings on appeal, including the court's finding that the defendant did not require him to clean the vehicle after work hours. The plaintiff claims in his brief that the trial court "ignore[d] the evidence in front of it," and that its findings were "erroneous" and contrary to what had been established by a preponderance of the evidence. To the extent that the plaintiff's brief may be interpreted to claim that the court's factual findings were clearly erroneous, we disagree. Under that standard, we overturn a finding of fact only "when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 225, 990 A.2d 326 (2010). Our review reveals that the court's findings are supported by the record. The mere fact that the plaintiff can point to evidence that would support a finding more favorable to him does not render the court's findings clearly erroneous.

[13] We observe that the plaintiff claims that the trial court improperly interpreted his claim for compensation for his commuting time to encompass only the time during which he drove the defendant's vehicles. He claims that he also sought compensation for his commuting time during the time period when he used his own vehicle to commute, on the basis that he was carrying the defendant's tools and equipment in the vehicle. The trial court's memorandum of decision does indeed characterize the plaintiff's claim as relating "to the time when he was driving a company vehicle . . . ." The court accordingly limited its legal analysis of the defendant's liability to the question of whether the plaintiff was entitled to compensation for the time he spent commuting in the defendant's vehicle, and did not make an indepen-

dent determination regarding any entitlement to compensation that the plaintiff may have had for the time he spent commuting in his own vehicle. Although the plaintiff did not seek an articulation or reconsideration on this basis, the trial court's factual findings preclude a conclusion that the plaintiff is entitled to compensation for his commuting time in his own vehicle. As we explain in part III of this opinion, those findings support the conclusion that the plaintiff, rather than the defendant, was the predominant beneficiary of his commuting time.

[14] Title 29 of the United States Code, § 218, provides in relevant part: "(a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . ."

[15] The plaintiffs received compensation for all travel time *between* inspection sites. *Singh* v. *New York*, supra, 524 F.3d 367 n.3.

[16] An additional hurdle facing an employee seeking recovery for travel time under the Portal-to-Portal Act is that, in order for an employee to be entitled to payment for the time, the amount of compensable time must not be de minimis. The de minimis doctrine has its roots in *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), in which the court observed: "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." Applying that principle, courts consider the following three factors in determining whether otherwise compensable travel time involves de minimis, and therefore noncompensable, amounts of time: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow* v. *United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

[17] Although the court concluded that the actual time that the handlers spent providing care to the dogs during the commute constituted work, the court also concluded that the time spent providing care was de minimis and therefore not compensable. *Reich* v. *New York City Transit Authority*, supra, 45 F.3d 652; see footnote 16 of this opinion.

[18] We emphasize that our conclusion that the FLSA preempts § 31-60-10 (b) of the regulations is necessarily limited to the facts of the present case. Our decision should not be read to conclude that the FLSA preempts § 31-60-10 (b) of the regulations in every instance. There may be factual circumstances under which § 31-60-10 (b) provides for greater benefits to employees than that allowed under the FLSA—the question of what those facts may be, however, simply is not before us in this appeal.

Moreover, although § 31-60-10 of the regulations as we have interpreted it is effectively limited to employee claims for compensation on the basis of the mere act of travel, we observe that nothing in § 31-60-10 of the regulations prohibits an employee who performs work that, by coincidence, occurs during the employee's regular commute, from receiving compensation pursuant to § 31-76b (2) (A). See footnote 5 of this opinion. Specifically, because General Statutes § 31-76b (2) (A) defines " '[h]ours worked' " to include, inter alia, "time during which an employee is required by the employer . . . to be on duty . . . and all time during which an employee is employed or permitted to work," we can conceive of factual circumstances under which an employee may be performing a compensable service for his employer at the same time that he is commuting. For example, if an employer telephones an employee during the employee's regular commute to work and engages the employee in a discussion that concerns work-related issues, the employee would be entitled to compensation for the time involved in the telephone call, if under the particular facts of the case, the conversation constituted "work" that the employee was permitted to do. The mere fact that the "work" happened to coincide with the employee's regular commute would not render the time noncompensable. Under such circumstances, the employee would not be seeking compensation for the regular commute per se, but rather for the services rendered to the employer during the commute.

It is beyond the scope of this appeal to determine under what circumstances an employee's actions during his commute would constitute compensable work pursuant to § 31-76b (2) (A). The plaintiff's commute, however, clearly does not rise to the level of compensable work under the statute.

Instead, the plaintiff's claim properly is governed by § 31-60-10 (b) of the regulations, because he seeks compensation for the mere act of traveling, on the basis that at the time that he was engaged in his regular commute, the defendant's tools were in the back of the vehicle.

[19] Although this court has accorded deference to an agency's reasonable interpretation of its own regulation; see *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 138–39, 778 A.2d 7 (2001); such deference is only afforded to an interpretation that has been adopted pursuant to formal rule-making or adjudicatory procedures. See, e.g., *Velez* v. *Commissioner of Labor*, supra, 306 Conn. 487–88 (according deference to Commissioner of Labor's decision in formal administrative proceeding); *MacDermid, Inc.* v. *Dept. of Environmental Protection*, supra, 129–30, 139–40 (according deference to declaratory ruling of Commissioner of Environmental Protection); *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 370–71, 627 A.2d 1296 (1993) (according deference to Commissioner of Environmental Protection administrative action). Similarly, our recognition of the principle that, "in certain circumstances, the legislature's failure to make changes to a long-standing agency interpretation implies its acquiescence to the agency's construction of the statute"; *Longley* v. *State Employees Retirement Commission*, supra, 284 Conn. 164; assumes that the interpretation has been adopted in a manner that would garner the legislature's attention.

[20] A consideration of whether an interpretation is time-tested takes into account both the length of time since it first was articulated and the number of formal decisions applying that interpretation. See *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 357, 10 A.3d 1 (2010) (noting board's numerous decisions over period of thirty years constitutes time-tested interpretation); *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 600, 996 A.2d 729 (2010) (noting agency interpretation was not time-tested when agency only had applied interpretation twice and interpretation had not been subject to judicial review); *Connecticut Assn. of Not-For-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390 n.18, 709 A.2d 1116 (1998) (noting "[f]our years hardly constitutes a time-tested agency interpretation" [internal quotation marks omitted]).