06-2969-cv
Singh v. City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: October 1, 2007                             Decided: April 29, 2008)

Docket No. 06-2969-cv

_____

RAJKUMAR SINGH, THOMAS S. MATTHEWS, VIVEK N. PATIL,
TRUSHANT SHAH, FARAMARZ ROBENY AND FREDO JOSEPH,

*Plaintiffs-Appellants*,

– v. –

THE CITY OF NEW YORK,

*Defendant-Appellee*.

_____

Before NEWMAN, SOTOMAYOR and WESLEY, *Circuit Judges*.

_____

Plaintiffs-appellants Rajkumar Singh, Thomas S. Matthews, Vivek N. Patil, Trushant Shah, Faramarz Robeny and Fredo Joseph (collectively the "plaintiffs") appeal from a June 2, 2006 judgment of the United States District Court for the Southern District of New York (Castel, J.), granting summary judgment to defendant-appellee City of New York (the "City") and denying the plaintiffs' cross-motion for summary judgment. The plaintiffs are fire alarm inspectors employed by the City who assert that they must be compensated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for their commuting time because the City requires them to carry inspection documents during their commutes. We hold that carrying inspection documents while commuting is not work under the FLSA except to the extent that it increases the duration of a commute. Because the record shows that such an increase in commuting time is *de minimis* as a matter of law, we AFFIRM the district court's judgment that none of the plaintiffs' commuting time is compensable under the FLSA.

MICHAEL J. ANDREWS, New York, New York,
*for plaintiffs-appellants*.

RONALD E. STERNBERG (Michael A. Cardozo, Corporation Counsel of the City of New York, Leonard Koerner, *on the brief*) New York City Law Department, New York, New York, *for defendant-appellee*.

SOTOMAYOR, *Circuit Judge*:

This case requires us to decide whether the City of New York ("City") fire alarm inspectors must be compensated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for all or part of their commuting time from home to work and back because they are required by their employer to carry and keep safe necessary inspection documents during their commutes. Plaintiffs-appellants Rajkumar Singh, Thomas S. Matthews, Vivek N. Patil, Trushant Shah, Faramarz Robeny and Fredo Joseph (collectively the "plaintiffs") appeal from a June 2, 2006 judgment of the United States District Court for the Southern District of New York (Castel, J.), granting summary judgment in favor of the defendant-appellee City and denying the plaintiffs' cross-motion for summary judgment. We hold that, in the particular circumstances of this case, the mere carrying of inspection documents without any other active employment-related responsibilities while commuting is not work under the FLSA, except to the extent that it increases the duration of the commute. The record shows that any increase in commuting time in this case is *de minimis* as a matter of law and thus not compensable under the FLSA. Therefore, we affirm the district court's grant of summary judgment, concluding that none of the plaintiffs' commuting time is compensable under the FLSA. In addition, we conclude that Singh's First Amendment retaliation claim is without merit because his speech was not a matter of public concern and was made only in his capacity as an employee and not as a citizen.

## BACKGROUND

For purposes of this appeal, we accept as true the plaintiffs' version of the facts and all other undisputed facts. The plaintiffs are employed by the City as inspectors within the Fire Alarm Inspection Unit ("FAIU") in the New York Fire Department. As field inspectors, the plaintiffs perform fire alarm inspections throughout the five boroughs of New York City. Based on a collective bargaining agreement, they are paid to complete a thirty-five hour work week, from 9:00 a.m. to 4:30 p.m. on Monday through Friday, including a half-hour break for lunch.

Field inspections generally take place Monday through Thursday, with each inspector completing approximately five "scheduled" and sixteen "unscheduled" inspections each week. On Friday mornings, inspectors normally report to FAIU headquarters to return completed inspection files for the past week and pick up new inspection files for the coming week. These files generally include documents describing the floor plans and fire alarm history of the buildings to be inspected; various inspection checklists, forms, and reports; and any correspondence between building owners and City agencies. Inspectors are responsible for keeping these documents safe from the time they pick them up on Friday morning until the time they return them on the following Friday. The plaintiffs estimate that the collective weight of these weekly assigned materials is between fifteen and twenty pounds.

The present dispute arises from the City's requirement that inspectors carry these inspection files without pay in an FAIU-provided briefcase during their commutes from home to work and back. In order to improve efficiency and maximize revenue-generating hours,[1] the City

---

[1] The City charges the owners or operators of inspected premises $210 per hour for each inspection performed during regular business hours. The City does not charge, however, for time spent by inspectors traveling to inspection sites.

3

does not permit inspectors to store their documents overnight at FAIU headquarters or to start or end their workday at headquarters. Instead, the City requires inspectors to report directly to their first inspection site at 9:00 a.m. with all necessary inspection materials and to sign out at the end of the day at the closest firehouse. Inspectors who report to inspection sites without the proper inspection files or who fail to keep the inspection files safe during the week are subject to discipline by the FAIU.

The plaintiffs assert that carrying and keeping safe inspection files affects their commutes in various ways and that they should therefore be compensated for their time and effort. For example, Matthews and Shah testified that carrying documents caused them occasionally to miss a bus or train. Patil and Robeny similarly testified that carrying the briefcase slowed down their walk to the subway station. Joseph testified that the briefcase slowed his commute by "give or take" ten minutes, although he admitted it was difficult to specify an exact number. Singh testified that carrying the documents caused him occasionally to miss the subway and that, as a result, he had to plan for twenty or thirty minutes extra time for his commute each way. Singh further testified that he would sometimes take the subway in the opposite direction of where he was heading in order to board a train with fewer people and more space for his briefcase. In addition, several inspectors complained that keeping the documents safe after work hours was inconvenient, preventing them from attending social events because they had to go directly home in order to ensure the safety of the documents. The plaintiffs do not assert that they were assigned any other employment-related tasks during their commutes.

Separately, Singh contends that the City violated his First Amendment rights when it suspended him without pay for thirty days in alleged retaliation for voicing concerns regarding

4

the City's above-described policy as well as its policy of retaining inspectors in "provisional" status for longer than nine months. Singh complained to various supervisors and fire department officials on several occasions in 2000 and 2001 about the requirement that inspectors transport and safeguard inspection documents, stating his belief that the practice violated the FLSA. Following those complaints, on April 2, 2001, Singh reported to his first inspection site without inspection documents. Henry Gittlitz, then-FAIU manager, informed Singh that his actions were a "dereliction of duty" and cautioned that any repeat behavior would result in administrative charges. In June 2001, Singh wrote on his time sheets that his workday began and ended at home. Deputy Chief Fire Inspector Barrington Brown directed Singh to discontinue this practice and informed him that his behavior could lead to administrative and criminal charges. Singh was later suspended for thirty days without pay on July 13, 2001. The fire department provided Singh with a memorandum detailing the five charges against him on August 6, 2001. This litigation began shortly thereafter.

The district court granted summary judgment in favor of the City on both the FLSA and the First Amendment retaliation claims. *See Singh v. City of New York*, 418 F. Supp. 2d 390 (S.D.N.Y. 2005). On the FLSA claim, the district court noted that ordinary commuting time is not compensable under the FLSA because the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, specifically excludes "traveling to and from the actual place of performance of the principal activity [of employment]," *Singh*, 418 F. Supp. 2d at 396, but any work completed during a commute that is "integral and indispensable" to a principal activity of employment falls outside that exclusion, *id.* at 397. The court then found that even if carrying and possessing inspection files was necessary for the inspectors to perform their jobs, "that fact without more does not

5

make this activity 'integral and indispensable' to the principal activity of the inspections." *Id.* at 399. The district court further concluded that any additional commuting time as a result of carrying the briefcases was *de minimis* as a matter of law. *Id.* at 400. Finally, the district court rejected Singh's First Amendment retaliation claim, explaining that his speech was not constitutionally protected because Singh voiced concerns only as an employee upon matters of personal interest and not as a citizen upon matters of public concern.[2] *Id.* at 404-05.

## DISCUSSION

On appeal, the plaintiffs argue that the district court erred in concluding: (1) that their commuting time was not compensable under the FLSA; and (2) that Singh's retaliation claim fails because he did not engage in protected speech on a matter of public concern. This Court reviews a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party and resolving all factual ambiguities in its favor. *See Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006). Summary judgment is appropriate only if we conclude that the case presents "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## I.    FLSA Claim

We analyze the plaintiffs' FLSA claim in two parts: whether the plaintiffs are entitled to compensation for their *entire* commute because the City requires them to carry inspection documents during their commute; and if not, whether the plaintiffs are entitled to compensation for any *additional* commuting time resulting from the City's policy.

---

[2] The district court also analyzed claims for compensation under the FLSA for administrative duties performed outside of normal working hours and for state-law retaliation and freedom of speech violations. Those claims are not on appeal to this Court.

6

*A.    All Commuting Time*

The FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944). Though Congress has never explicitly defined what constitutes work under the FLSA, the Supreme Court has generally described work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598; *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008). However, exertion is not necessarily required for an activity to be compensable because "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). The issue is whether the "time is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case." *Id.*; *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997).

Because the activity at issue here occurs outside the scheduled workday, the Portal-to-Portal Act, which amended the FLSA, adds a further obstacle to the plaintiffs' potential recovery. The Portal-to-Portal Act exempts employers from compensating employees under the FLSA "for or on account of" time spent "traveling to and from the actual place of performance of the principal activity or activities" of employment and any activities which are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). The Supreme Court has interpreted this provision to mean that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

7

Accordingly, while employees need not be compensated "for or on account of" commuting to and from work, they must be compensated for any work performed during a commute that is "integral and indispensable" to a principal activity of their employment. *See Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 (10th Cir. 2006); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999); *see also* 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.").

In short, in order for the plaintiffs to prevail under the FLSA, as amended by the Portal-to-Portal Act, they must demonstrate that carrying inspection documents during a commute: (1) constitutes work under the FLSA and (2) is an integral and indispensable part of their inspecting duties. For the reasons explained below, we conclude that the mere carrying of a briefcase without any other active employment-related responsibilities does not transform the plaintiffs' entire commute into work.[4]

As noted earlier, whether an employee's expenditure of time is considered work under the FLSA turns in part on whether that time is spent predominantly for the benefit of the employer or the employee. Although we have not previously applied the predominant benefit standard to commuting time, we find useful guidance from FLSA cases applying this test in other contexts. For example, courts frequently apply the predominant benefit standard in the context of employee break time, where employees have sought compensation for their breaks because,

---

[4] Our holding does not affect the status of inspectors' travel between inspection sites during normal working hours, which remains fully compensable under the FLSA. *See* 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.").

though relieved from normal duties, they remain responsible for certain employment-related functions.[5] In these cases, courts have distinguished between employer requirements that substantially hinder an employee's ability to use the time freely and those requirements that place only a minimal burden on the employee's use of time. Thus, in *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d at 64-66, we held that employees who were required to remain at their outdoor work site during their lunch breaks to maintain public safety and provide security must be compensated for that time because it was spent predominantly for the benefit of the employer. In that situation, we noted that although the employees were otherwise free to eat their lunch, they lacked flexibility with regard to the lunch break and their presence at the work site was indispensable. *Id.* at 65.

Importantly, we distinguished those circumstances from several cases decided by other circuits where employees, though retaining some employment duties, were significantly less burdened such that the break time remained predominantly for the employees' benefit. *Id.* at 66. For example, in *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), the Sixth Circuit held that the Postal Service did not need to compensate a letter carrier for his lunch break during which he remained accountable for the safety of undelivered mail and had to carry with him various postal items and receipts. *Id.* at 814-15. The court reasoned that these burdens did "not require him to engage in any substantial activities or interfere with his lunch period to such an extent that the FLSA would require compensation." *Id.* Likewise, several other circuits have held that police

---

[5] Similarly, the predominant benefit test is often applied in the context of on-call time, where employees have sought compensation for time spent "on call" because their employer restricted their ability to use time freely for their own benefit. *See, e.g.*, *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000).

officers need not be compensated for meal time during which they were required to remain in uniform and to respond to calls for assistance and inquiries from the public, because those minimal restrictions, though benefitting the employer, still permitted the officers flexibility and independence such that they predominantly benefitted from the time. *See, e.g.*, *Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994); *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992).

This case is significantly more similar to these latter cases than to *Southern New England Telecommunications*. Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time.

We acknowledge that the constraints of commuting may limit an employee's ability to use commuting time as freely as in other contexts, such as during a break. But those constraints, which are normal incidents of employment, *see* 29 C.F.R. § 785.35, should not factor into the predominant benefit test, just as the constraints of a remote work site should not factor into the test for a worker who cannot use his break time as freely as he could with a more convenient work site. In the commuting context, we believe that the appropriate application of the predominant benefit test is whether an employer's restrictions hinder the employees' ability to use their commuting time as they otherwise would have had there been no work-related restrictions. Based on this test, we conclude that the mere carrying of inspection documents does

not transform plaintiffs' otherwise non-compensable commute into compensable time.[6]

Although we reach our holding based on the predominant benefit test, our analysis in many ways resembles a *de minimis* test. In an analogous case, the Sixth Circuit held that police officers need not be compensated for their entire commuting time, during which they were required to monitor police radios in order to respond to emergencies, because "the amount of work involved in monitoring a police radio during a commute is simply de minimis." *Aiken*, 190 F.3d at 759. As the court explained, the compensability of the commute is determined by "whether the employer requires the employee to perform a significant amount of work during the commute." *Id.* at 759 n.4. Our analysis mirrors that of the Sixth Circuit; we simply reach our holding through a slightly different path. The point is that, under either approach, when an employee is minimally restricted by an employer during a commute, such that his or her use of commuting time is materially unaltered, the commuting time will generally not be compensable under the FLSA.

In deciding this case, we note the practical consequences of the plaintiffs' challenge. Ruling in their favor could have a wide-ranging impact, suddenly imposing upon businesses across the country a liability to compensate employees anytime those employees must commute

---

[6] The legislative history of the Employee Commuting Flexibility Act of 1996 ("ECFA"), which amended the Portal-to-Portal Act with regard to the use of employer-provided vehicles, provides further support for our conclusion. The ECFA exempts employers from compensating employees for the use of an employer's vehicle for travel (and for activities incidental to that use) so long as the travel is within the normal commuting area for the employer's business and the use of the vehicle is subject to an agreement between the employer and the employee (or representative). *See* 29 U.S.C. § 254(a). Although the ECFA context differs from our case because of the voluntary agreement requirement, the House Report for the ECFA makes clear Congress's view that "[m]erely transporting tools or supplies should not change the noncompensable nature of the travel." H.R. Rep. No. 104-585, at 5 (1996).

to work with important documents, tools, or communications devices.[7]  In the sixty years following the Portal-to-Portal Act, we are unaware of any court that has required employers to pay employees for otherwise non-compensable commuting time simply because employees must travel with a briefcase or a small toolbox or a handheld device in order to be prepared for the workday.  We are not convinced that the facts in this case warrant such groundbreaking law.

In sum, although the City is pushing the limits on the burdens it may impose on its employees during a commute before it must pay them for such time, we conclude nevertheless that under the circumstances presented in this case, the carrying of a briefcase during a commute without any other employment-related activity does not transform the entire commute into work for purposes of the FLSA.

### B.    Additional Commuting Time

Our analysis differs with regard to additional commuting time resulting from the City's policy.  Unlike ordinary commuting time, there is no question that any added commuting time is both required by the City and is time spent necessarily and primarily for the benefit of the City. *See Tenn. Coal*, 321 U.S. at 598.  Indeed, the inspectors receive no benefit or convenience from the lost personal time resulting from a lengthened commute, thus leaving no dispute that this incremental time is spent predominantly for the benefit of the City.

---

[7]  The plaintiffs here do not seek compensation for the physical exertion of carrying a briefcase.  Rather, they believe that the FLSA requires that they be compensated for the entire commute simply for the presence of the documents, including, for example, when the documents are in the trunks of their cars or under their legs on a train.  As the plaintiffs contended at oral argument, if instead of being required to carry a briefcase of documents, they were required to carry a small mobile device containing electronic copies of those same documents, the City would still have to compensate them for their commuting time.  Such an argument loses sight of the definition of work, which must involve some level of exertion or lost time.

As noted earlier, because such time occurs outside the normal working hours, it is non-compensable under the Portal-to-Portal Act unless carrying inspection materials is an integral and indispensable part of the plaintiffs' inspecting duties. Because we conclude below that the additional commuting time in this case is *de minimis* as a matter of law, we do not resolve this issue and instead assume without deciding that carrying inspection documents is an integral and indispensable part of the plaintiffs' inspecting duties.[8]

The *de minimis* doctrine permits employers to disregard, for purposes of the FLSA, otherwise compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* This Court considers three factors in determining whether otherwise compensable time should be considered *de minimis*: (1)

---

[8] The "integral and indispensable" standard requires that an activity be both integral (i.e., "necessary") and indispensable (i.e., "essential to completeness" or "organically joined or linked") to a principal activity of employment. *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007); *see also IBP*, 546 U.S. at 40 ("[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' . . . ."). Here, carrying inspection materials is arguably integral and indispensable because the paperwork is essential for inspectors properly to complete a field inspection. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (holding that powering up and testing an x-ray machine is integral and indispensable to an x-ray lab technician's duties); *see also Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956) (holding that sharpening knives is an integral and indispensable part of a butcher's duties). In *New York City Transit Authority*, 45 F.3d 646, we concluded that police dog handlers' completion of dog-care activities (e.g., feeding, walking, or training) during a commute was compensable as an integral and indispensable part of their employment activities. *Id.* at 650-51. However, we left open the question of whether the handlers' transportation of the dogs to work was itself integral and indispensable – a question that is in many ways analogous to the transportation of inspection materials for purposes of the Portal-to-Portal Act – holding instead that the time was non-compensable because it involved no work. *Id.* at 652.

13

the practical administrative difficulty of recording additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis. *See N.Y. City Transit Auth.*, 45 F.3d at 652.

Based on these factors, we conclude that any additional commuting time in this case is *de minimis* as a matter of law.[9] First, as a practical administrative matter, it would be difficult for

_____

[9] In *Tum v. Barber Foods, Inc.*, 546 U.S. 21 (2005), the companion case to *IBP*, a jury concluded that time spent donning and doffing protective gear – which the district court previously held was an integral and indispensable part of the workers' employment – was *de minimis* and therefore not compensable. The Supreme Court vacated this judgment because the district court erroneously excluded from the jury's consideration walking time between the production line and the place of donning and doffing, implying that this post-donning/pre-doffing walking time should have been part of the jury's *de minimis* analysis. We noted in response to *IBP* that it was unclear "whether the *de minimis* test measures only the first integral and indispensable activity of the day, or includes as well all intervening steps that precede the next principal activity of the continuous workday." *Gorman*, 488 F.3d at 594 n.7. Although we do not fully resolve this question here, we believe that the *de minimis* test necessarily only measures time that involves work. *See Anderson*, 328 U.S. at 692 ("When the matter in issue concerns only a few seconds or minutes of *work* beyond the scheduled working hours, such trifles may be disregarded." (emphasis added)). As we have already determined that the remainder of the commuting time does not constitute work for purposes of the FLSA, that time is not included here as part of our *de minimis* analysis.

Additionally, the plaintiffs contend that the *de minimis* test is irrelevant here because of the Department of Labor's "continuous workday rule," which provides that "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted." 29 C.F.R. § 790.6(a); *see also IBP*, 546 U.S. at 37. The plaintiffs assert that their "compensable statutory 'workday' starts when [they] begin transporting the defendant's inspection records to their first assigned inspection site (i.e., their first principal activity)," and thus they are entitled to compensation for their entire commute under the "continuous workday rule." In *New York City Transit Authority*, we concluded that any time that the canine officers spent engaged in true dog-care activity during their commutes was *de minimis*, and therefore the officers were not entitled to compensation for that time. 45 F.3d at 652. Notwithstanding, the plaintiffs' contention to the contrary, then, the law of this circuit – at least since *New York City Transit Authority* – is that a *de minimis* principal activity does not trigger the continuous workday rule. We do not read *IBP* as casting doubt on this holding.

14

the City to record and monitor the additional commuting time for each inspector. The task of creating a reliable system to distinguish between ordinary and additional commuting time for each individual inspector on a daily basis would be challenging, if not impossible. Second, the plaintiffs' depositions show that the aggregate claims are quite small, generally amounting to only a few minutes on occasional days.[10] Finally, while the plaintiffs carry inspection documents to and from work everyday, several conceded that their commutes are actually only lengthened on those occasional days when they miss a train or bus. Accordingly, we affirm the district court's judgment that none of the plaintiffs' commuting time is compensable under the FLSA.[11]

## II.   First Amendment Retaliation Claim

Singh separately asserts that his First Amendment rights were violated when the City suspended him without pay for thirty days in alleged retaliation for voicing concerns regarding the City's policy of requiring inspectors to carry inspection documents to and from work and its policy of retaining inspectors in "provisional" status for longer than nine months, allegedly in violation of New York Civil Service Law § 65. To establish a First Amendment retaliation

---

[10] For example, Matthews, Patil, Robeny and Shah testified that carrying the documents slowed down their walk to the bus or subway station, causing them occasionally to miss a bus or train. Joseph testified that his commute was slowed by "give or take" ten minutes, although he admitted it was difficult to specify an exact number. Only Singh made a large aggregate claim, asserting that he had to plan for twenty or thirty minutes extra time for his commute. However, the substantial difference between Singh and the other plaintiffs is the result of Singh's idiosyncratic behavior – including occasionally boarding trains going in the wrong direction – and thus is not time spent necessarily and primarily for his employer's benefit.

[11] We note that the FLSA provides only a floor as to when an employer must compensate employees for their time. The inspectors remain free to contract with the City through the collective bargaining process for additional compensation for their efforts completed while commuting. Given the plaintiffs' ongoing employment with the City, a contractual agreement may yield the most equitable resolution to this dispute.

15

claim, a plaintiff must show: (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006). We agree with the district court that Singh's speech was not a matter of public concern and, accordingly, that summary judgment was properly awarded in favor of the City.

Employee expression is not a matter of public concern when it "cannot be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision." *Id.* at 147. Whether speech is a matter of public concern is question of law that is determined by the "content, form and context of a given statement, as revealed by the whole record." *Id.* at 147-48 & n.7. Here, Singh's speech was not a matter of public concern, relating only to internal employment policies of the City and made only in his capacity as an employee and not as a citizen.[12] As a result, Singh cannot establish the first

_____

[12] Singh's attempt to turn his personal grievance into a matter of public concern through a March 2001 conversation with the Fire Commissioner where he allegedly raised the issue of "provisional" employees – an issue that he asserts did not concern him as a "permanent" employee – is unavailing. Singh stated in his affidavit that he was requested to give up his "permanent" status in 1998 and to accept a "provisional" title and was later advised that unless he agreed to a reduced title, he would not be considered for any promotions. It is in this context that Singh raised his concerns regarding the Civil Service Law with the Commissioner. In addition, Singh was apparently involved in an earlier discrimination lawsuit against the FAIU related to the "provisional" versus "permanent" employee status issue, and he claimed in his deposition that he was continuously being retaliated against because of that suit. As Singh summarized: "These charges are being brought upon as an instrument to harass me and frame wrongly as retaliation to my various attempts to seek justice per my contract, my rights as [a] civil servant and above all my civil rights which are being violated by management."

16

element of his First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.