[994 NYS2d 278]

LILYA ANDRYEYEVA et al., Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v NEW YORK HEALTH CARE, INC., Doing Business as NEW YORK HOME ATTENDANT AGENCY, et al., Defendants.

Supreme Court, Kings County, September 16, 2014

## APPEARANCES OF COUNSEL

*Beranbaum Menken LLP*, New York City (*Jason Rozger* and *Jennifer Smith* of counsel), for plaintiffs.

*Cohen Tauber Spievack & Wagner P.C.*, New York City (*Sari Kolatch* of counsel), for defendants.

## OPINION OF THE COURT

CAROLYN E. DEMAREST, J.

In this putative class action by plaintiffs Lilya Andryeyeva and Marina Odrus, individually and on behalf of all others similarly situated (collectively plaintiffs), plaintiffs bring this renewed motion pursuant to CPLR 901 and 902 to certify this case as a class action "consisting of a class of home attendants who worked 24-hour shifts for defendants" New York Health Care, Inc. (NYHC), New York Home Attendant Agency (NYHAA), and Murray Englard (collectively defendants) "between the dates of June 22, 2008 and the date defendants cease, or are enjoined from, not paying those individuals the minimum, overtime, and spread of hours wages required by New York Labor Law and regulations."[1] Plaintiffs also move pursuant to CPLR 904 authorizing notice of the action to the putative class by first-class mail. Defendants oppose such relief claiming that plaintiffs have failed to meet the statutory criteria for certification of such class, primarily because the determination of whether a putative class member even has a claim requires a fact-intensive inquiry into whether the home attendant actually received eight hours of sleep time, at least five uninterrupted hours of sleep, and three hours for meals during each 24-hour shift.

This is the second class certification motion in this case. In a decision and order dated February 19, 2013, this court denied plaintiffs' class certification motion without prejudice and ruled that limited discovery must be conducted in order to determine whether the requirements of CPLR 901 have been met and to assess the considerations listed in CPLR 902. Plaintiffs have

---

1. In plaintiffs' previous motion for class certification, plaintiffs sought to certify an additional subclass consisting of all home attendants who worked more than 40 hours per week and were not paid overtime at a rate of 1½ times their regular rate of pay for hours worked in excess of 40 hours. In their renewed motion, plaintiffs no longer seek to certify this subclass and only focus on the group of home attendants who worked 24-hour shifts.

since obtained payroll records covering the proposed class for the proposed period and plaintiffs' analysis has identified 1,063 home attendants who worked 24-hour shifts who plaintiffs contend would be part of the putative class.

## Background

NYHC is a New York for-profit corporation and licensed home care agency that provides home care services under contract to managed care organizations, private parties, and other entities. NYHC created NYHAA to administer a contract that NYHC entered into with the New York City Human Resources Administration (HRA) to provide home attendant services to Medicaid-eligible individuals between November 2001 and February 2011. Plaintiffs are home attendants employed by the defendants to provide services to homebound, elderly, and disabled clients. Plaintiffs' duties included: personal care services, such as assistance with walking, bathing, dressing, personal grooming, meal preparation, feeding and toileting; heavy and light cleaning, such as vacuuming, mopping, dusting, cleaning windows, cleaning bathrooms, doing laundry and taking out garbage; shopping; running errands; and escorting clients. Plaintiffs worked a number of 24-hour shifts during their employment, and as many as five such shifts back to back in a week. When working these 24-hour shifts, plaintiffs were required to stay overnight at the residences of defendants' clients so as to be available to provide assistance throughout the night, but do not "live" in the home of their employer's client, the person to whom their services are rendered.[2] Home attendants working 24-hour shifts are not permitted to leave the client at any time.

Plaintiffs allege three violations of the New York Labor Law, including: failure to pay the statutory minimum wage in violation of Labor Law § 652 and 12 NYCRR 142-2.1; failure to pay 1½ times the basic minimum hourly rate for all hours worked in excess of 40 per workweek in violation of Labor Law § 650 *et seq.* and 12 NYCRR 142-2.2;[3] and failure to pay the "spread of

---

**2.** Defendants insist upon characterizing the prospective class members as providing "live-in" services, in accordance with what they claim is industry practice, even though these employees do not reside in the home of the client and actually maintain separate residences, only remaining in the clients' homes overnight as part of a 24-hour shift.

**3.** Plaintiffs concede that putative class members are exempt under the Fair Labor Standards Act (FLSA) and therefore have not brought a claim for

hours" premium as required by 12 NYCRR 142-2.4. For a 24-hour shift, defendants acknowledge they paid home attendants an hourly rate for only 12 daytime hours plus a flat rate for the 12 nighttime hours. Payroll records for plaintiff Andryeyeva, for example, show that when she worked one 24-hour shift, she was paid $156 gross, or $6.50 an hour, and that she was paid $325 or less for two 24-hour shifts, or $6.77 per hour, and $495.60, or $6.88 per hour, when she worked three 24-hour shifts. Andryeyeva's payroll records also show that only 12 hours out of each 24-hour shift were counted towards her overtime pay.

Plaintiffs contend that defendants' policy of paying home attendants for 12 hours at their regular rate of pay, plus a flat rate for their nighttime hours, violates the Labor Law because home attendants are entitled to be paid at least the minimum wage for each hour of a 24-hour shift, plus 1½ times minimum wage for any hours beyond 40 per week. Plaintiffs argue that home attendants were not paid the statutorily required overtime rate pursuant to 12 NYCRR 142-2.2 and that they were not paid the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which they worked over 10 hours, in violation of 12 NYCRR 142-2.4. From the beginning of the class period through July 23, 2009, the minimum wage rate was $7.15 (12 NYCRR 142-2.1). According to plaintiffs, a home attendant working one 24-hour shift in a week should have been paid at least $178.75, consisting of 24 hours at the minimum wage rate, plus $7.15 for spread of hours pay. A home attendant working two 24-hour shifts should have been paid at least $386.10, consisting of 40 regular hours at the minimum wage rate, eight overtime hours at 1½ times the minimum wage rate, and $14.30 in spread of hours pay. When the minimum wage rate increased to $7.25 after July 23, 2009, plaintiffs assert that home attendants should have been paid at least $181.15 for one 24-hour shift and at least $391.30 for two 24-hour shifts. Plaintiffs argue that, based on defendants' production of payroll records, all home attendants working 24-hour shifts were paid less than the minimum hourly wage.

Defendants argue that because putative class members were afforded eight hours for sleep and three hours for meals, these 11 hours may be excluded from their pay. According to defendants, putative class members were paid at least the minimum

overtime at their regular rate of pay. However, plaintiffs claim that they are entitled to 1½ times the minimum wage for their overtime hours in excess of 40 hours per week under New York State law.

wage based on the minimum wage order (12 NYCRR 142-2.1) (the wage order) and the New York State Department of Labor (DOL) interpretation of this statute. Defendants claim that for the period that the minimum wage was $7.15, NYHC was only required to pay home attendants at least $100.10 for a single 24-hour shift, consisting of 13 hours at the minimum wage rate, plus $7.15 in spread of hours pay.[4] When the minimum wage increased to $7.25, defendants claim that NYHC was only required to pay home attendants at least $101.50 for a single 24-hour shift, consisting of 13 hours at the minimum wage rate, plus $7.25 in spread of hours pay.

Defendants' position is that all putative class members employed by NYHC were paid according to industry standards and the industry's interpretation of the wage order. Defendants further assert that all putative class members who worked under the NYHAA name pursuant to the contract with HRA were paid at a level comparable to that offered by not-for-profit home care agencies' collective bargaining agreements, and that this requirement was incorporated into the HRA contract. Defendants also state that wages paid to NYHC's home attendants are set, in part, by contracts with private health services agencies or local departments of health, which often provide for the number of hours for which a home attendant working a 24-hour shift will be paid. Relying on several opinion letters issued by the DOL, defendants contend that NYHC is only required to pay a home attendant at the minimum wage rate for 13 out of the 24 hours of a 24-hour shift and that eight hours for sleep time and three hours for meal time may be excluded. According to the affidavit of Karen Parker Morris, the director of patient services for NYHC, sworn on March 17, 2014, home attendants working 24-hour shifts were entitled to eight hours of sleep and were entitled to take meal breaks (Morris aff ¶ 6). Defendants state that NYHC conducts an orientation for new home attendants in which it explains that home attendants will be paid on the basis of a 12-hour workday and instructs new hires about their entitlement to sleep and meal breaks (id.). Defendants thus concede that the prospective class members were not paid the minimum wage for each of the 24 hours of a 24-hour shift.

---

4. The spread of hours pay regulation pursuant to 12 NYCRR 142.2-4 only requires employees to be paid for an additional hour at minimum wage when the employee works for more than 10 hours in a day, so that the total wages paid are equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage (see NY St Dept of Labor, Op No. RO-09-0168 [Mar. 11, 2010], Kolatch affirmation, exhibit N).

Moreover, it is undisputed that the prospective class members were credited with only 12 of the 24 hours they worked for purposes of determining overtime.

Defendants contend that because home attendants were afforded eight hours of sleep, five hours of which were to be uninterrupted, and three hours for meal breaks, NYHC is not required to pay the minimum hourly wage for these nighttime hours to the extent that a putative class member actually received this amount of meal and sleep time during a 24-hour shift. According to defendants, home attendants are instructed to notify their employer if they are unable to sleep for at least five uninterrupted hours due to a client's sleep-related problems so that NYHC may arrange for a split shift where two home attendants are with the client for 12 hours each. The crux of defendants' argument is that this case is not suitable for class certification because, in order to determine whether a putative class member even has a claim, a fact intensive inquiry is required to determine the amount of sleep and meal time a home attendant actually received during each 24-hour shift. Thus, they claim numerosity, commonality, and typicality cannot be established so as to warrant certification of a class.

## Discussion

In order to obtain certification of a class, plaintiffs must show that each of the prerequisites of CPLR 901 (a) have been met, including

"1. the class is so numerous that joinder of all members . . . is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims . . . of the representative parties are typical of the claims . . . of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The party seeking class certification bears the burden of establishing the criteria prescribed in CPLR 901 (a) (*CLC/CFI Liquidating Trust v Bloomingdale's, Inc.*, 50 AD3d 446, 447 [1st Dept 2008]). "This burden must be met by providing an evidentiary basis for class certification" (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481, 481 [1st Dept 2009]).

" 'Once these prerequisites are satisfied, the court must consider the factors set out in CPLR 902, to wit, the possible interest of class members in maintaining separate actions and the feasibility thereof, the existence of pending litigation regarding the same controversy, the desirability of the proposed class forum and the difficulties likely to be encountered in the management of a class action' " (*Rife v Barnes Firm, P.C.*, 48 AD3d 1228, 1229 [4th Dept 2008], *lv dismissed in part and denied in part* 10 NY3d 910 [2008], quoting *Ackerman v Price Waterhouse*, 252 AD2d 179, 191 [1st Dept 1998]).

"The party or parties seeking class certification have the burden of establishing compliance with every requirement of both CPLR 901 and 902, and the determination whether to certify a class is vested in the sound discretion of the court" (*Rife*, 48 AD3d at 1229 [internal quotation marks and citation omitted]; *see also Alix v Wal-Mart Stores, Inc.*, 57 AD3d 1044, 1045 [3d Dept 2008]).

The issue in dispute with respect to whether class certification is appropriate here is whether the wage order requires defendants to pay putative class members for each of the 24 hours of a 24-hour shift, regardless of how many hours an individual home attendant was actually able to take for meals and sleep, or whether eight hours for sleep and three hours for meals may be excluded.[5] The subsidiary issue is how many hours out of the 24-hour shift must be counted towards a putative class member's overtime pay. The wage order provides, in pertinent part:

"(b) The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee. However, a residential employee— one who lives on the premises of the employer— shall not be deemed to be permitted to work or required to be available for work:

"(1) during his or her normal sleeping hours solely

---

**5.** This court previously discussed this issue in its decision of February 19, 2013, in which it was determined that, under the applicable statutes and rules in New York State, the hours afforded for sleep or meals is irrelevant to determining plaintiffs' proper compensation. That determination remains the law of the case.

because he is required to be on call during such hours; or

"(2) at any other time when he or she is free to leave the place of employment" (12 NYCRR 142-2.1 [b]).

DOL regulations regarding overtime provide that an "employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" subject to the exemptions of the FLSA (12 NYCRR 142-2.2).[6] Employees that fall under an FLSA exemption must nevertheless be paid "overtime at a wage rate of one and one-half times the basic minimum hourly rate" (*id.*).

In support of its right to deduct sleep and meal time from the class members' compensation, defendants rely on a March 11, 2010 opinion letter issued by the DOL interpreting the wage order (NY St Dept of Labor, Op No. RO-09-0168 [Mar. 11, 2010] [2010 DOL opinion]). The 2010 DOL opinion states that

"live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals. If an aide does not receive five hours of uninterrupted sleep, the eight-hour sleep period exclusion is not applicable and the employee must be paid for all eight hours. Similarly, if the aide is not actually afforded three work-free hours for meals, the three-hour meal period exclusion is not applicable" (*id.* at 4).

This court's prior decision of February 19, 2013, addressing the effects of this opinion upon the instant action, concluded that, because the 2010 DOL opinion applied only to employees presumed to be subject to an exemption from New York's minimum wage standards by virtue of providing exclusively "companionship services" within the meaning of the FLSA exemption, and specifically excluded "sleep-in home attendants," like the members of the proposed class, from exemption under Labor

---

**6.** 29 USC § 213 (a) (15) describes the exemption arguably applicable to plaintiffs herein as follows: "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves" are not subject to the minimum wage and maximum hour requirements of the FLSA. Companionship services may "include the performance of general household work: *Provided, however*, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked" (29 CFR 552.6).

Law § 651 (5) (a), the 2010 DOL opinion does not address the issue before this court. This court has already ruled that because plaintiffs do not reside or "live" in the home of their clients, but maintain their own homes and merely serve their clients' needs sporadically overnight, the reasoning of the 2010 DOL opinion respecting the FLSA companionship exemption does not apply. In another matter where the 2010 DOL opinion was cited, this court found the 2010 DOL opinion to be "ambiguous, at best" and not conclusive of plaintiff's claims similar to those herein (see Kodirov v Community Home Care Referral Serv., Inc., 35 Misc 3d 1221[A], 2012 NY Slip Op 50808[U], *2 [Sup Ct, Kings County 2012]).

Defendants' continued reliance upon the federal court's decision in Severin v Project Ohr, Inc. (2012 WL 2357410 [SD NY, June 20, 2012, No. 10 Civ 9696 (DLC)]), which this court declined to follow, is misplaced for the reasons previously articulated in my decision of February 19, 2013. Similarly, defendants' contention that the practice in the industry of paying for fewer than 24 hours worked by a nonresidential aide, and the use of "live-in" as a synonym for "sleep-in" during a 24-hour shift, is somehow dispositive of the legal issues regarding the enforcement of New York Labor Law, is rejected.

In response to the court's order to provide supplemental briefing on this matter, based on the affirmation of Roni E. Glaser, a New York attorney who states that she represents many licensed home care services agencies in cases related to wage and hour matters, defendants have submitted another recent DOL decision, dated November 14, 2013, rendered in connection with a DOL investigation of Ms. Glaser's client for unpaid wages (the 2013 DOL letter). In the 2013 DOL letter, two former employees of Ms. Glaser's clients, working as home health aides, filed claims for unpaid wages, "alleging that they were paid 10 hours of works [sic] for each 24 hour live-in assignment." The 2013 DOL letter, signed by Frank King, Acting Supervising Labor Standards Investigator, states that "the New York State Department of Labor has had a long standing opinion that each home health aide assigned to a 24 hour live-in arrangement must be paid no less than 13 hours of work." The 2013 DOL letter further advises "[y]our client paid 10 hours for the claimant's live-in assignments [which] would not be deemed as proper payment of wages made for all hours worked" and directed the production of time and payroll records for "all 24 hours live-in assignments." Defendants argue that the 2013 DOL letter refers

to nonresidential home attendants assigned to 24-hour shifts and that it clearly demonstrates that plaintiffs should be paid no less than for 13 hours, but not for 24 hours. The 2013 DOL letter does not support such conclusion and, in fact, suggests to the contrary, that all of the hours worked are subject to be compensated.

Defendants also provide another DOL opinion letter by Senior Attorney Robert Ambaras in the office of counsel to the DOL, dated July 14, 1995 (the 1995 DOL letter), which states:

> "With regard to 'live-in' home health aides, who reside in the home of the recipient of services, to the extent that such persons are required to remain 'on-call' in the recipient's home on a 24-hour-per-day basis, it is the policy of the New York State Department of Labor that such persons must be paid for no less than 13 hours for each such 24-hour period, provided they are afforded eight hours for sleep and actually receive five hours uninterrupted sleep, and that they are afforded three hours for meals."

The 1995 DOL letter further provides, however, distinguishing health aides who reside in the home of the client from those who do not, that "non-'live-in' home health aides, who do not reside in the home of the disabled recipient of services" must be paid at least minimum wage for all hours up to 40 hours in a workweek and at least 1½ times the minimum wage rate "for all additional hours in a work week, during which such persons are required to remain 'on call' in the recipient's home, regardless of the amount of time spent in performing concretely defined tasks, with the exception of the time actually afforded for sleeping and eating."

It is well settled that the DOL's "interpretation of a statute it is charged with enforcing is entitled to deference," and "[t]he construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 79 [2008], quoting *Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597, 604 [2005], quoting *Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]). In referencing the exclusion of sleep and meal time from hours for which minimum wage must be paid, the three DOL letters cited by defendants do not clearly differentiate between home attendants that truly reside, or "live" in the client's home and those that spend 24 hours in a client's home but maintain their own

residences. However, all three DOL letters state that home attendants working a 24-hour shift must be paid for *at least* 13 hours, and do not approve defendants' practice of treating the 24-hour shift as only 12 hours. Ultimately, however, it is for the courts to determine the correct statutory interpretation (*see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]).

In order to determine whether defendants legally excluded eight hours of sleep and three hours for meals from plaintiffs' pay, it is necessary to determine what it means to be "available for work" in the context of the wage order. "It is for the court to determine as a matter of law whether the plaintiff's activities constitute work" (*O'Neill v Mermaid Touring Inc.*, 968 F Supp 2d 572, 580 [SD NY 2013]). It is undisputed that putative class members were required to remain on the premises with the client during the entire 24-hour shift and could not leave the client at any time, even during meals. NYHC's human resources manager, Glen Persaud, stated in his deposition that the Employee Orientation Manual instructs NYHC's employees that they are not to leave the patient at any time (exhibit B to Smith declaration [Persaud tr] at 37, lines 18 through 40, line 25). Further, Andryeyeva and Odrus have testified that they were never permitted to leave their patients during any time while working a 24-hour shift and were never relieved from caring for the patient, even during meal or sleep time. The 1995 DOL letter states that

> "[i]f a 'live-in' home health aide is relieved of his or her duties for a defined period of time, whether by another home health aide or a relative of the disabled person, or because of the absence of the disabled person, and is free to leave the home of the disabled person, that home health aide need not be compensated for any such period."

However, it is clear that putative class members were never relieved from their duties during a 24-hour shift and were on call and responsible for responding to the client's needs at any point during such a shift. Plaintiff Odrus testified at deposition that she could not recall ever having five hours of uninterrupted sleep or three hours for meals, but was frequently called upon to attend to her clients between 11:00 p.m. and 5:00 a.m. Plaintiff Andryeyeva similarly testified at deposition that she rarely received five hours of uninterrupted sleep or uninterrupted meals and had to assist clients at frequent intervals during the night.

"Courts have consistently held that 'on-call' time can constitute work and is compensable under the FLSA where an employer restricts an employee's ability to use time freely for the employee's own benefit" (*O'Neill* at 581). The United States Supreme Court has defined the "statutory workweek" to include "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace" (*IBP, Inc. v Alvarez*, 546 US 21, 25-26 [2005], quoting *Anderson v Mt. Clemens Pottery Co.*, 328 US 680, 690-691 [1946]). The wage order employs similar language to provide that "[t]he minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer" (12 NYCRR 142-2.1 [b]). The wage order carves out an exception for employees who live on the employer's premises, but it is undisputed that the putative class members maintain their own homes. They are not, therefore, included in this exception.

In *Armour & Co. v Wantock* (323 US 126 [1944]), plaintiffs were fireguards who were required to remain on the employer's premises for 24-hour shifts. Similar to the putative class members, the plaintiffs in *Armour* were paid for their daytime hours but were not paid for their nighttime hours when they were subject to call but were allowed to spend these hours sleeping or for recreation (*id*. at 126). The Court found that under the arrangement between the employer and the fireguards, the nighttime hours were working time and should be compensated (*id*. at 134). The Court further stated that

> "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case" (*id*. at 133).

The Court in *Armour* found that the fireguards' presence on the employer's premises was primarily for the benefit of the employer because the fireguards were hired to protect the employer's premises from threats of fire and to perform other

minor duties throughout the night (*id.* at 134). Regardless of whether the fireguards spent most of their time sleeping or otherwise amusing themselves, they were still considered on duty (*id.*).

In applying the predominant benefit test, the court must distinguish between "employer requirements that substantially hinder an employee's ability to use the time freely and those requirements that place only a minimal burden on the employee's use of time" (*Singh v City of New York*, 524 F3d 361, 368 [2d Cir 2008]). Similar to a fireguard's duties as discussed in *Armour*, a home attendant's duty during nighttime hours is to respond to the client's needs, if any should arise, regardless of whether the home attendant is afforded eight hours for sleep and three hours for meals and how the home attendant actually uses the time. Plaintiffs Andryeyeva and Odrus stated in their depositions that whenever a disabled or elderly client needed to use the bathroom during the night, for example, plaintiffs would have to provide assistance (*see* exhibit P to Smith declaration [Andryeyeva tr] at 47; exhibit Q to Smith declaration [Odrus tr] at 41-45). Plaintiffs were also responsible for responding to emergencies that occurred during the night and were generally responsible for the client's well-being during all 24 hours of a shift. Moreover, home attendants are only assigned 24-hour shifts when a client requires care around the clock. Using the predominant benefit test, it is evident that home attendants assigned 24-hour shifts remain in the client's home for the benefit of the employer and the client, and their use of time is so restricted as to qualify as work. The same applies for plaintiffs' meal breaks as, according to defendants' own evidence, they are not permitted to leave the client at any time during a 24-hour shift (*see Reich v Southern New England Telecom. Corp.*, 121 F3d 58 [2d Cir 1997] [holding that craft workers who were required to stay at the work site during lunch breaks required compensation for the meal break because workers were performing activities predominantly for the benefit of the employer]).

Defendants argue that NYHC paid the putative class members consistent with the way such home attendants are paid throughout the industry. Defendants contend that the HRA, which contracts with home health care agencies to provide home attendants for Medicaid patients, requires these agencies to pay home attendants a wage package comparable to that offered by not-for-profit home care agencies' collective bargaining agreements. One of the largest health care unions in New York, 1199

SEIU United Healthcare Workers, for example, agreed on a wage scale for home attendants working 24-hour shifts consisting of 12 hours at an hourly rate, plus an additional $16.95 differential for the nighttime hours. However, none of the putative class members were employed pursuant to a collective bargaining agreement. Defendants also argue, based on public policy, that requiring defendants to compensate home attendants for each hour of a 24-hour shift would dramatically elevate the cost of employing home attendants and would cause problems with Medicaid reimbursement for clients that require 24-hour care. Industry practice does not, however, supersede minimum wage laws and it is well settled that an employee may not waive the protections of the labor laws by private agreement (*see Padilla v Manlapaz*, 643 F Supp 2d 302, 311 [ED NY 2009]). Moreover, it is the policy of the State of New York to ensure compensation adequate to support the needs of the employee (*see* Labor Law § 650).

Accordingly, the court rejects defendants' contention that, as a matter of law, sleep and meal hours must be excluded from the hourly wages of a home attendant who does not reside or live in the home of his or her client. As a nonresidential employee, a putative class member is required by the defendant employer to be on the premises of the client for 24 hours, predominantly for the benefit of the employer and the client, and the amount of time the home attendant is actually able to spend sleeping or for meals is irrelevant. A case-by-case inquiry into the facts peculiar to each putative class member's shift is therefore not necessary to establish a claim. Class certification is therefore appropriate as plaintiffs have met the burden of establishing the criteria of CPLR 901 and 902. Following limited discovery as directed by this court's prior decision, plaintiffs have established numerosity by identifying a total of 1,063 putative class members who worked 24-hour shifts under the NYHC or NYHAA name based on payroll records. The payroll records indicate the amount that each home attendant was paid for each 24-hour shift, clearly indicating whether the amount paid was the minimum required by the wage order.

CPLR 901 (a) (2) requires that there be questions of law or fact common to the class which predominate over any questions affecting only individual class members. "[T]he rule requires predominance, not identity or unanimity, among class members" (*Friar v Vanguard Holding Corp.*, 78 AD2d 83, 98 [2d Dept 1980]). Defendants argue that commonality is not present

because each individual home attendant must prove, for each 24-hour shift, that they were not afforded the requisite hours for sleep and meals. As the court has already found that putative classes members are "available for work" during each hour of a 24-hour shift, this argument is unavailing. The ultimate issue in this litigation is whether the defendants paid their employees the statutorily required wages, including overtime compensation and spread of hours pay, such that this issue predominates over any individual issues (*see Jara v Strong Steel Door, Inc.*, 20 Misc 3d 1135[A], 2008 NY Slip Op 51733[U], *16 [Sup Ct, Kings County 2008]).

Defendants' reliance on *Alix v Wal-Mart Stores, Inc.* (57 AD3d 1044 [3d Dept 2008]) is misplaced because *Alix* involved an over-broad proposed class of 200,000 employees, some of whom had conflicting interests, and four different alleged improper employment practices which did not affect all the class members. Here, plaintiffs claim that each putative class member was damaged by defendants' failure to pay the minimum wage rate, spread of hours pay, and overtime at the rate of 1½ times the minimum wage pursuant to 12 NYCRR 142-2.1, 142-2.2 and 142.2-4. Defendants do not dispute the allegation that the class members were not paid minimum wage for all hours worked. The individual assessment of how much each putative class member was underpaid based on how many 24-hour shifts he or she worked during the class period is a matter of individual damages and is not an impediment to class certification (*see Jara*, 2008 NY Slip Op 51733[U], *16; *see also Lamarca v Great Atl. & Pac. Tea Co., Inc.*, 16 Misc 3d 1115[A], 2007 NY Slip Op 51424[U] [Sup Ct, NY County 2007], *affd* 55 AD3d 487 [1st Dept 2008]).

CPLR 901 (a) (3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Typicality is satisfied when the "plaintiff's claim derives from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory" (*Friar*, 78 AD2d at 99). Defendants argue that typicality cannot be satisfied because what actually happens on each shift is essential to the determination of the proper wages for any putative class member. However, it is evident from the payroll records and defendants' own admissions that home attendants working 24-hour shifts were all paid pursuant to the same policy of only paying an hourly rate for 12 daytime hours. Plaintiffs have identified 1,063 individuals, including the

class representatives, who worked 24-hour shifts and all claims are based on the same legal theory that the wage order requires that putative class members be paid at least the minimum hourly wage for each of the 24 hours of a shift. While there may be issues of fact as to the number of such shifts a putative class member worked, the claims of plaintiffs are typical of the claims of all potential class members (*see Jara*, 2008 NY Slip Op 51733[U], *16).

CPLR 901 (a) (4) provides that the plaintiffs must be able to "fairly and adequately protect the interests of the class." "It is incumbent on the class representatives to protect the interests of the class, especially in light of the binding effect a judgment in a class action has on the class as a whole" (*Jara*, 2008 NY Slip Op 51733[U], *18 [citations omitted]). In determining whether a plaintiff is a suitable class representative, we consider whether a conflict of interest exists between the representative and the class members, the representative's background and personal character, as well as her familiarity with the lawsuit, to determine ability to assist counsel in its prosecution, the competence and vigor of the representative's attorneys, and the financial resources available to prosecute the action (*Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14, 24 [1st Dept 1991]). Defendants argue that Andryeyeva[7] cannot accurately represent the class because of contradictions between her deposition testimony and the factual allegations in the complaint. Plaintiffs contend that Andryeyeva has demonstrated a commitment to the class by assisting with preparation of the complaint, sitting for depositions, answering interrogatories, and producing documents. Andryeyeva's interests are not in conflict with any of the other putative class members as the overarching claim is that defendants improperly compensated all employees working 24-hour shifts and the only difference between putative class members is the number of such shifts that each plaintiff worked. Although the court in *Jara* found that plaintiffs' ability to represent the class was questionable because there were allegations that the representatives were acting in retaliation for a dispute between their union and the employer (2008 NY Slip Op 51733[U], *18), there are no such allegations of retaliation here and any minor discrepancies in Andryeyeva's deposition

---

**7.** Defendants insist that plaintiff Odrus is no longer offered as a representative of the class. This court is unable to perceive the basis for such contention as Odrus is an equally qualified member of the prospective class as Andryeyeva.

testimony does not rise to the level of affecting her representation of the class. Further, plaintiffs' attorneys have demonstrated their experience and ability to litigate this claim.

CPLR 901 (a) (5) requires a finding that a class action is superior to other methods for fair and efficient adjudication of the controversy. Defendants argue that plaintiffs have an administrative remedy under the New York Labor Law because employees can file a complaint with the DOL. However, as this court previously stated, although the administrative procedure would provide a forum for plaintiffs' grievances, such authority is discretionary and the court cannot compel the Commissioner of Labor to commence an administrative proceeding (*see Krebs v Canyon Club, Inc.*, 22 Misc 3d 1125[A], 2009 NY Slip Op 50291[U], *23 [Sup Ct, Westchester County 2009]). Also, given the controversy regarding the manner in which these employees should be paid, it would be more efficient to have an adjudication by the court on the issues as a matter of law, rather than over a thousand individual administrative determinations.

Plaintiffs have also adequately established the requirements of CPLR 902. As stated in this court's prior decision, it is unlikely that any single putative class member has a particular interest in bringing a separate action because potential individual awards are not likely to be significant enough to support the cost of separate litigation (*see Lewis v Alert Ambulette Serv. Corp.*, 2012 WL 170049, *14-15, 2012 US Dist LEXIS 6269, *38-39 [ED NY, Jan. 19, 2012, 11-CV-442]). Further, it would be highly inefficient to prosecute each individual claim and replicate complaints, discovery, and trials. Plaintiffs have represented that they are aware of no other litigation over the instant controversy with the defendants. Given the size of the putative class, this forum is preferable to an administrative one. Finally, management of the class in the instant case is not likely to be overly difficult because the class members have been specifically identified through payroll records, there is a common issue to be decided, and any potential damages can be readily ascertained through payroll records as well.

## Conclusion

Plaintiffs' motion for class certification is granted and the class is certified as follows: home attendants who worked 24-hour shifts for defendants New York Health Care, New York Home Attendant Agency, and Murray Englard and were not paid minimum, overtime, and spread of hours wages between

June 22, 2008 and the date defendants cease, or are enjoined from not paying those individuals the minimum, overtime, and spread of hours wages required by New York Labor Law and regulations.

Plaintiffs are authorized to give notice of the action to the individual class members by certified mail. Plaintiffs are directed to submit a proposed notice, providing for an option to opt out of the class, to the court on notice within 15 days.